Frank Joseph SONTAG, Appellant,

v.

William F. WARD, individually and in his official capacity as Chairman of the PA Board of Probation and Parole; The Pennsylvania Board of Probation & Parole as an entity of the State of PA; Martin Horn, individually and in his official capacity as Secretary of the PA Department of Corrections; The Pennsylvania Department of Corrections as an entity of the State of PA; Neal K. Mechling, individually and in his official capacity as Superintendent of SCI Waynesburg.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 12, 2001.

Decided Nov. 20, 2001.

Reargument En Banc Denied Jan. 28, 2002.

Frank Joseph Sontag, petitioner, pro se.

Robert S. Englesberg, Pittsburgh, for respondents.

Before DOYLE, President Judge, SMITH, J., and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Frank Joseph Sontag (Sontag) appeals from an order of the Court of Common Pleas of Greene County (trial court) which sustained the preliminary objections filed by William F. Ward, Chairman of the Pennsylvania Board of Probation and Parole; Martin Horn, Secretary of the Pennsylvania Department of Corrections; Neal K. Mechling, Superintendent of SCI Waynesburg; the Pennsylvania Board of Probation and Parole (Board) and the Pennsylvania· Department of Corrections (collectively, Appellees) and dismissed Sontag's complaint. We affirm.

Sontag is an inmate at SCI Waynesburg serving a sentence of three to six years based on his plea of no contest to numerous misdemeanor sexual offenses. Sontag filed a complaint under 42 U.S.C. § 1983 when he was denied parole after serving three years.[1] The complaint sought de-

---

1. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage

claratory and injunctive relief, money damages for breach of contract, punitive damages, attorney's fees and costs. According to the complaint, although Sontag had an excellent prison record, his request for parole was denied because he had not successfully completed a sex offender treatment program (program). Sontag did not complete the program because he refused to admit his guilt, which is a requirement of the program. Sontag maintained that by forcing him to admit guilt in order to complete the program and thereby be recommended for parole, his right against self-incrimination was violated. Moreover, the practice arbitrarily discriminates against sex offenders, violates his plea of no contest which he maintained is a contract with the state, and employs *ex post facto* legislation against him. In response, Appellees filed preliminary objections. The trial court sustained the objections and concluded that Sontag failed to state a cause of action. This appeal followed.

■ Our review of an order sustaining preliminary objections in the nature of a demurrer is to determine whether the law states with certainty that no recovery is possible. In making this review, we must accept as true all well-pled allegations of material fact set forth in the complaint and all inferences deducible therefrom. *Dynamic Sports Fitness Corp. of America v. Community YMCA*, 768 A.2d 375, 377 (Pa. Cmwlth.2001).

■ Sontag's first issue is that forcing him to admit guilt in the program violates his right against self-incrimination. Sontag argues that because he entered a plea of no contest, rather than guilty, he never admitted his guilt and to require him to do so now in order to complete the program would require him to violate his right against self-incrimination. We observe however that a plea of nolo contendre is to be treated the same as a guilty plea.[2] *Commonwealth v. Hayes*, 245 Pa.Super. 521, 369 A.2d 750 (1976). "[I]t is the unusual plea of 'nolo contendre' that says, in effect, 'I will not contest' and admits the facts charged. . . ." *Id.* at 751. Moreover, "[j]ust because one has a constitutional right does not mean that no adverse consequences can flow from exercising such a right." *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 778 (Pa.Cmwlth.1997). The privilege against self-incrimination does not extend to consequences of a non-criminal nature, even if it would result in the loss of probation. *Id.*

■ To the extent that Sontag argues that his sentence has been increased because he has asserted his right against self-incrimination, we observe that his sentence of three to six years remains the same. Although he was denied parole for not having completed the program, a parolee has no right to parole upon expiration of his minimum sentence. A prisoner only has a right to apply for parole at the expiration of his minimum term and to have the application considered by the Board. *Rogers v. Pennsylvania Board of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999). As such, we find no merit to Sontag's first issue.

■ Next, Sontag maintains that Appellees have retroactively applied the provisions in 42 Pa.C.S. §§ 9791–9799.7, commonly known as Pennsylvania's Megan's

---

of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proceeding for redress. . . .

**2.** No contest is also termed *nolo contendre.* Black's Law Dictionary (7th ed.1999).

Law (Law) in violation of the prohibition against *ex post facto* laws. The Law, which attempts to protect the safety and welfare of people in the Commonwealth, provides for the registration and notification of sexually violent predators and certain other offenders who are about to be released from custody. 42 Pa.C.S. § 9791(b). Sontag's argument is that the Board developed the sex offender program pursuant to the Law and such an application is a violation against *ex post facto* laws. There is nothing in the Law however, which directs Appellees to implement such a program. As such, we fail to see how Megan's Law in conjunction with Sontag's participation in the program, violates the prohibition against ex post facto laws.

■ Sontag also argues that he had a contract with the district attorney and trial court whereby in exchange for a sentence of three to six years, he did not have to admit guilt to a number of sexual offenses, but instead enter a plea of no contest. By requiring him to admit guilt in order to complete the program, Sontag maintains that the "contract" he had with the district attorney and trial court has been breached. We disagree. In exchange for his plea of no contest, Sontag received a sentence of three to six years. The "contract" did not guarantee that Sontag would be released after three years, but that three years was the minimum that must be served and six years the maximum. Since Sontag's sentence has not changed, there is no breach of "contract."

■ Sontag next asserts that treating sex offenders differently from other prisoners, by requiring their participation in the program and mandating an admission of guilt, is unconstitutional and violates equal protection. Initially, we note

that Sontag is free to exercise his right not to participate in the program. *Weaver*, 688 A.2d at 778. Moreover, the constitutional guarantee of equal protection of the laws does not require that the government treat all persons alike. Rather, it assures that all similarly situated persons are treated alike. *Bell v. Horn*, 762 A.2d 776, 778 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, —— Pa. ——, 785 A.2d 91, 2001 Pa. LEXIS 709. Where the government action does not burden fundamental or important rights and does not create a suspect or quasi-suspect classification, there is no equal protection violation so long as it is rationally related to a legitimate government purpose.[3] *Id.* Here, the policy of requiring sex offenders to admit their guilt in order to successfully complete the program, treats all sex offenders alike and is rationally related to the purpose of rehabilitating offenders so as to protect the public.

■ Finally, Sontag argues that, based on *Marshall v. Pennsylvania Board of Probation and Parole*, 162 Pa.Cmwlth. 256, 638 A.2d 451 (1994), the Board improperly denied him parole based on the fact that the he did not receive a favorable recommendation from the Department of Corrections. Sontag has misinterpreted *Marshall*. *Marshall* stands for the proposition that the Board must *consider* a prisoner's application for parole once his minimum term has expired and may not restrict the application, i.e., the Board may not condition its consideration of an inmates application for parole upon receiving a favorable recommendation from the Department of Corrections. In this case, the Board did not refuse to consider Sontag's application for parole. The Board, in fact, considered his request and denied it and "it is without question that the

---

**3.** Race and national origin are suspect classifications; gender and legitimacy are quasi-

suspect classifications. *Bell,* 762 A.2d at 779 n. 1.

Board, in its discretion, has the authority to either grant or deny a prisoner parole." *Id.* at 454. As such, we find no merit to Sontag's argument.

In accordance with the above, as Sontag has failed to state a cause of action, the order of the trial court is affirmed.

### ORDER

Now, November 20, 2001, the order of the Court of Common Pleas of Greene County at No. A.D. No. 530, dated January 7, 2000 is affirmed.