

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-2004

# USA v. Poellnitz

Precedential or Non-Precedential: Precedential

Docket No. 03-4044

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Poellnitz" (2004). 2004 Decisions. Paper 534.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/534

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4044

———

UNITED STATES OF AMERICA

v.

SHAWN L. POELLNITZ,

Appellant

———

On Appeal from the United States
District Court
for the Western District of Pennsylvania
(Dist. Ct. No. 95-cr-00158)
District Judge: Honorable William L.
Standish

———

Submitted Under Third Circuit LAR
34.1(a)
May 14, 2004

Before: NYGAARD, McKEE and
CHERTOFF, Circuit Judges.

(Filed: June 25, 2004)

MARY BETH BUCHANAN
United States Attorney
BONNIE R. SCHLUETER
Assistant U.S. Attorney, Chief of Appeals
Division
LAURA S. IRWIN
Assistant U.S. Attorney
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 15219

Counsel for Appellee

LISA B. FREELAND
Acting Federal Public Defendner
KAREN S. GERLACH
Assistant Federal Public Defender
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222

Counsel for Appellant

———

OPINION

———

CHERTOFF, Circuit Judge.

Shawn L. Poellnitz appeals from
the District Court's order finding that he
violated a condition of his supervised
release by committing a state crime.
Poellnitz argues that (1) there was
insufficient evidence to prove that he
committed a state crime, namely because
he pled *nolo contendere* (instead of guilty)
to the crime in state court and passed a
polygraph test, and (2) the delay between

1

the filing of the supervised release petition and the supervised release violation hearing was not "reasonably necessary," as required by 18 U.S.C. § 3583. The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291. For the reasons stated below, we will reverse the District Court's order and remand for a determination of whether there is sufficient evidence (under a preponderance standard) that Poellnitz committed a crime.

## I.

On November 16, 1995, Poellnitz pled guilty to engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957(a), and making a false, ficticious or fraudulent claim, in violation of 18 U.S.C. § 287. The District Court sentenced Poellnitz to 37 months in prison followed by 3 years of supervised release.[1] The terms of the sentence included a provision that "[w]hile on supervised release, the defendant shall not *commit* any crimes, federal, state, or local and shall abide by the standard conditions of supervised release." App. at 3 (emphasis added).

Poellnitz was released from custody and began to serve his term of supervised release on November 19, 1998. The term of supervised release was set to expire on November 18, 2001. On November 9, 2001, the United States Probation Office (USPO) issued a "Status Report/Request for Warrant in Abeyance." The letter reported that Poellnitz was arrested on June 7, 2001, and charged with indecent assault, corruption of a minor, and endangering the welfare of a child. On November 13, 2001, the probation office filed a Petition on Supervised Release ("Petition"), alleging Poellnitz violated conditions of supervised release and requesting the court issue a bench warrant to be held in abeyance until the pending state charges were resolved. On November 15, 2001, the District Court granted the Petition, and on November 16, 2001, the District Court issued the arrest warrant, to be held in abeyance.

On February 10, 2003, Poellnitz entered a plea of *nolo contendere* in the Court of Common Pleas of Allegheny County, Pennsylvania, to the charge of corruption of a minor.[2] On February 20, 2003, the USPO filed a Supplemental Petition on Supervised Release ("Supplemental Petition"), alleging violations of the supervised release and requesting issuance of a summons for Poellnitz to appear to show cause why the District Court should not revoke his supervised release. On February 25, 2003, the District Court granted the Supplemental Petition and scheduled the revocation hearing for April 11, 2003. The District Court subsequently *sua*

---

[1] Poellnitz received this sentence for each count, to be served concurrently.

[2] The other counts—indecent assault and endangering the welfare of a child—were withdrawn.

*sponte* rescheduled the hearing on three occasions: On February 27, 2003, the hearing was rescheduled for May 2, 2003; on April 8, 2003, the hearing was again rescheduled for May 16, 2003; and, on May 28, 2003, the hearing was again rescheduled for June 20, 2003.

Additionally, on July 10, 2003, the District Court granted Poellnitz a continuance due to Poellnitz's health problems, and the hearing was rescheduled for July 21, 2003. Similarly, on two occasions the District Court granted Government motions to reschedule because of the unavailability of Probation Officer Verne Howard: On July 16, 2003, the District Court granted a motion and reset the hearing for September 12, 2003; and on July 24, 2003, the District Court granted a motion resetting the hearing for September 26, 2003. The hearing ultimately took place on October 2, 2003. There is no indication on the docket sheet as to why the hearing was postponed between September 26 and October 2.[3]

In an October 3, 2003 Order, the District Court found that Poellnitz had violated a state law while on supervised release and failed to pay full restitution. The District Court ordered that the term of supervised release be reinstated to commence October 2, 2003, and to run for a term of five months. On October 9, 2003, the District Court issued an Amended Order, pursuant to Federal Rule of Criminal Procedure 35(a).[4] In the Amended Order, the District Court found Poellnitz guilty of violating a state law while on supervised release, but contrary to the original Order did not find him guilty of failing to pay full restitution. The Court treated the state law violation as a grade C violation and, pursuant to 18 U.S.C. § 3583(e)(3) and (h), revoked Poellnitz's supervised release and sentenced him to a term of one month's imprisonment, to be served in home confinement pursuant to 18 U.S.C. § 3583(e)(4) and § 7B1.3(a)(2) and (c)(1) of the United States Sentencing Guidelines.[5]

---

[3] All dates are derived from the District Court docket entries. See App. at 27-34.

[4] "(a) Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

[5] The Notice of Appeal was filed on October 3, 2003. Pursuant to Federal Rule of Appellate Procedure 4(b)(5), "[t]he filing of a notice of appeal under this Rule 4(b) does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a), nor does the filing of a motion under 35(a) affect the validity of a notice of appeal filed before entry of the order disposing of the motion." Fed. R. App. P. 4(b)(5). Thus, the District Court retained jurisdiction to amend the judgment. The Government argues that this appeal properly flows from the October 9, 2003 Amended Order, and not the October 3 Order, as suggested by Poellnitz. Because

## II.

Poellnitz argues there was insufficient evidence to prove that he violated a condition of his supervised release by committing a crime because he pled *nolo contendere* (rather than guilty) to the crime charged and passed a polygraph test. Poellnitz's challenge to the propriety of the District Court's consideration of a *nolo contendere* plea as proper evidence that he committed a crime in violation of his supervised release is a question that is "essentially legal in nature, [and] we will exercise *de novo* review." United States v. Blackston, 940 F.2d 877, 882 (3d Cir. 1991) (citing United States v. Ortiz, 878 F.2d 125, 126-27 (3d Cir. 1989)). We conclude that the District Court erred as a legal matter in relying on the *nolo* plea as evidence of commission of a crime.[6]

---

the challenges mounted by Poellnitz are equally applicable to both orders, the technical question of which order is being appealed is not dispositive. However, to avoid duplicative and unnecessary litigation, we treat this as an appeal from the October 9 Amended Order.

[6] We do not address the factual question of whether there is sufficient evidence to establish a violation, a determination that would be reviewed for clear error. See Blackston, 940 F.2d at 879. Therefore, we need not address Poellnitz's argument that in light of the polygraph examination results indicating that Poellnitz was truthful in denying certain alleged activities, the District Court

The plain language of 18 U.S.C. § 3583(e)(3) requires a finding by "a preponderance of the evidence that the defendant violated a condition of supervised release." When the condition is that the defendant not commit a crime, there is no requirement of conviction or even indictment. This Court has emphasized "the broad discretion which is traditionally given to district courts to revoke probation when probation conditions are violated." United States v. Gordon, 961 F.2d 426, 429 (3d Cir. 1992). A "court can revoke probation when it is reasonably satisfied that the probation conditions have been violated, without the government being required to present proof beyond a reasonable doubt that the defendant committed the alleged acts." Id. at 429; see also United States v. Chambers, 429 F.2d 410, 411 (3d Cir. 1970) (citations omitted). In other words, "to revoke probation it is not necessary

---

lacked sufficient evidence to support its finding of commission of a crime. While the District Court admitted the polygraph examination, it concluded that the examination was not "particularly relevant . . . because . . . [it] relates to . . . conduct different from the conduct . . . alleged to have been the basis for the corruption charge." App. at 262. On remand, the District Court should consider this evidence, in conjunction with other evidence in the record, to determine whether a preponderance of the evidence supports the conclusion that Poellnitz *committed* a crime.

that the probationer be adjudged guilty of a crime, but only that the court be reasonably satisfied that he has violated one of the conditions." United States v. Manuszak, 532 F.2d 311, 317 (3d Cir. 1976).

The novel question presented here is whether Poellnitz's *nolo contendere* plea, without more, is sufficient to establish that he violated a condition of supervised release even under the relatively relaxed burden of proof that applies. The answer depends upon (1) what actually constitutes a violation of the condition of release, and (2) what significance we attribute to a *nolo* plea.

The condition of release specified in the revocation proceeding was that the "defendant shall not commit any crimes, federal, state or local." App. at 3. The condition was not that defendant shall not be convicted of another crime. What is forbidden is illegal conduct, not another judgment of conviction. In order to establish that Poellnitz was guilty of a violation of this condition of release, therefore, the government did not have to show that he was convicted of a new crime, but did have to show that he actually committed a new crime. In this case, the District Court's finding that Poellnitz committed a new state crime was not based exclusively or primarily on evidence of the facts underlying the alleged new state crime. Rather, the District Judge treated the *nolo* plea as the proof that Poellnitz committed the underlying crime. See App. at 18.

In the normal course, one might expect that if the court finds defendant was convicted of a crime, the court may automatically revoke release based on the defendant's commission of the underlying offense. That is not so when it comes to the peculiar legal effect of the plea of *nolo contendere*. While a *nolo* plea is indisputably tantamount to a conviction, it is not necessarily tantamount to an admission of factual guilt. See United States v. Adedoyin, No. 02-3042, slip op. at 8-9 (3d Cir. May 28, 2004); see also United States v. Wyatt, 762 F.2d 908, 911 (11th Cir. 1985) (holding *nolo* plea was not admissible to prove defendant had admitted his guilt, although the underlying facts were admissible); United States v. Graham, 325 F.2d 922, 928 (6th Cir. 1963) (internal citations omitted) ("It is true that a nolo contendere plea permits a judgment of conviction and the imposition of punishment the same as if a plea of guilty had been made. However, it has been held that it is not admissible to aid proof of guilt in another proceeding."). And since the condition of release in this case was to avoid the commission of a crime—not to avoid a conviction for a crime—establishing that Poellnitz was convicted of a new crime through his plea is not enough. What matters is whether he committed that crime as a matter of fact. Thus, we are obliged to ask whether the plea that Poellnitz entered can be deemed to establish underlying guilt, and not merely the fact of a criminal conviction.

We observe at the outset that the effect of the *nolo* plea in question here is governed by state law. The Federal Rules of Criminal Procedure and the Federal Rules of Evidence establish certain

5

limitations on the effect of a *nolo* plea as a matter of federal criminal law, or in the context of federal trials. See Adedoyin, No. 02-3042, slip op. at 7-8. Here, however, the *nolo* plea in question is not a federal plea, and the rules of evidence do not apply in a supervised release proceeding.[7] See Fed. R. Ev. 1101(d)(3).

The critical question therefore is how Pennsylvania law regards the legal effect of the *nolo* plea that Poellnitz entered in response to the state criminal charge of corrupting a minor. If Pennsylvania treats such a plea as a judgment of conviction, but not an admission of guilt, then that plea was entitled to no evidentiary weight at the revocation hearing. Cf. Olsen v. Correiro, 189 F.3d 52, 60 (1st Cir. 1999) (citations omitted) ("[I]n most jurisdictions, including Massachusetts, a *nolo* plea is not a factual admission that the pleader committed a crime. Rather, it is a statement of unwillingness to contest the government's charges and an acceptance of the punishment that would be meted out to a guilty person.").

On the other hand, if state law regards a *nolo* plea as constituting an admission or evidence of criminal conduct, then it was entitled to whatever weight the District Court chose to give it. So, for example, in United States v. Verduzco, 330 F.3d 1182, 1185 (9th Cir. 2003), the Ninth Circuit relied on California Penal Code § 1016, which provides that the "legal effect of [a nolo contendere] plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes," in holding that the District Court properly relied on *nolo* plea to find violation of supervised release. See also United States v. Guardarrama, 742 F.2d 487 (9th Cir. 1984) (per curiam) (same).[8]

A review of the applicable statutes and case law reveal that in Pennsylvania a *nolo* plea does not constitute an admission of factual guilt, and thus has no

---

[7] In Adedoyin, the defendant at trial sought to exclude a California conviction. We did not, however, examine the meaning of a *nolo* plea under California law. Rather, because federal evidentiary rules applied, the case was analyzed pursuant to Federal Rule of Evidence 410.

[8] Several circuit courts have noted that "[a] certified copy of a conviction is proper evidence that a defendant violated a state or federal law and, thereby, violated a condition of his supervised release." United States v. Hofierka, 83 F.3d 357, 363-64 (11th Cir. 1996) (per curium) (citing cases); see also United States v. Fleming, 9 F.3d 1253, 1254 (7th Cir. 1993) (per curium). These cases, however, deal with an entirely different situation—instances where the defendant entered a *guilty* plea. A *nolo* plea is an entirely different species—"a *nolo* plea is not a factual admission that the pleader committed a crime." Olsen, 189 F.3d at 59.

evidentiary value in assessing whether the defendant committed a crime. The Pennsylvania Rules of Evidence differentiate between the admissibility of guilty pleas and *nolo* pleas in subsequent proceedings:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> . . . .
> (2) a plea of *nolo contendere*
> . . . .

Pa.R.E. 410. The Comment clarifies that the Rule "does not prohibit the use of a conviction that results from a plea of *nolo contendere*, as distinct from the plea itself, to impeach in a later proceeding (subject to Pa.R.E. 609) or to establish an element of a charge in a later administrative proceeding." Pa.R.E. 410 cmt. (citing Commonwealth v. Snyder, 182 A.2d 495 (Pa. 1962); Eisenberg v. Commonwealth, 516 A.2d 333 (Pa. 1986)).[9] Thus, the Pennsylvania evidence code draws a distinction between the permissible use of a *nolo* plea to prove the fact of conviction and the impermissible use of a *nolo* plea as

evidence of guilt in a subsequent proceeding.

Unlike its federal counterpart, Federal Rule of Evidence 410, the Pennsylvania Rules of Evidence appear to be equally applicable to revocation proceedings. See Pa.R.E. 101 ("These rules of evidence shall govern proceedings in all courts of the Commonwealth of Pennsylvania's unified judicial system, except as otherwise provided by law."). While the revocation proceeding at issue is a *federal* proceeding, and thus not governed by the Pennsylvania Rules of Evidence, the Pennsylvania Rules provide substantial support for the conclusion that, under Pennsylvania law, *nolo* pleas do not have any evidentiary value as an admission of guilt.[10]

Pennsylvania case law further supports this conclusion. Under Pennsylvania law, "[a]lthough the effect of a plea of nolo contendere is equivalent to a plea of guilty, the import of the pleas

---

[9] Rule 609's limitations are not applicable to this case.

[10] As the District Court noted, § 71.4 of the Pennsylvania Administrative Code provides, in pertinent part, that "[a] revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa. Code § 71.4. While this provision may support the conclusion that a guilty plea and a *nolo* plea have the same effect in terms of *triggering* a revocation hearing, the section in no way suggests that both types of pleas have the same evidentiary value.

is not the same. In pleading nolo contendere; the defendant does not admit his guilt, but merely consents to being punished as if he were guilty." Commonwealth v. Gunter, 771 A.2d 767, 773 (Pa. 2001) (Cappy, J., concurring) (citing Commonwealth v. Boyd, 292 A.2d 434, 435 (Pa. Super. 1972); North Carolina v. Alford, 400 U.S. 25, 35 n.8 (1970); Eisenberg, 516 A.2d at 335).[11]

In Eisenberg, the Pennsylvania Supreme Court explicitly addressed the question of the effect of a *nolo contendere* plea under Pennsylvania law:

> The effect of a nolo contendere plea in Pennsylvania is concisely discussed in the leading case of Commonwealth v. Ferguson, 44 Pa. Superior Ct. 626 (1910):
> A plea of nolo contendere, when accepted by the court, is, in its effect upon the case, equivalent to a plea of guilty. It is an implied confession of guilt only, and cannot be used against the defendant as an admission in any civil suit for the same act. The judgment of conviction follows upon such plea as well as upon a plea of guilty.
> In 1970, the United States Supreme Court, in North Carolina v. Alford, [400 U.S. 25 (1970)] held that the courts could impose criminal penalties where a defendant pleading nolo contendere specifically denied guilt of the underlying facts. . . . The Alford procedure is substantially similar to the practice in Pennsylvania on nolo contendere pleas.

Eisenberg, 516 A.2d at 335 (internal citations omitted).

The Eisenberg court held that an Alford plea, which is "substantially similar" to a Pennsylvania *nolo* plea, was sufficient to constitute a "conviction" pursuant to the state statute under which Eisenberg was charged. 516 A.2d at 336. In so holding, the court explained that "the Department here does not attempt to use the plea as judicial admission of the fact of fraud. Rather, the conviction entered upon the plea itself is the operative fact which authorizes suspension. This evidence of the conviction itself is not affected by the procedure leading up to the plea . . . . " Id. The Eisenberg court, however, specifically noted that a *nolo* plea is not proper evidence of the underlying facts of the conviction:

---

[11] In Gunter, the Pennsylvania Supreme Court held that a *nolo* plea was involuntary, in part because of the failure of the colloquy to mention that the defendant was entering a *nolo* plea, as distinct from a guilty plea. 771 A.2d at 771.

A *nolo* plea to a criminal charge is not evidence of either its underlying or ultimate facts in a later civil action. It follows as a corollary that in a civil action based on the same act or transaction, the pleader is not precluded from denying or contesting the facts of the transaction by his nolo plea.

Id. at 336 n.6 (internal citations omitted).

The decisions of Pennsylvania's lower courts similarly reflect this distinction between the use of a *nolo* plea as evidence of the fact of conviction as opposed to evidence of the commission of the underlying crime. For example, in Strain v. Commonwealth, the court explained that "our Supreme Court has upheld the use of a conviction entered on a plea of *nolo contendere* as evidence in a subsequent civil matter where it was the fact of conviction, not the plea, that was the operative fact relied upon." 784 A.2d 845, 848 (Pa. Cmwlth. Ct. 2001) (citing Eisenberg). The Strain court went on to explain that in that case "[s]uspension of a licensee's operating privilege under the Compact . . . does not turn on whether the licensee has admitted or denied guilty; it is the conviction that triggers the provision." Id.; see also Bourdeev v. Commonwealth, 755 A.2d 59, 61-62 (Pa. Cmwlth. Ct. 2000); Commonwealth v. Boyd, 292 A.2d 434, 435 (Pa. Super. Ct. 1972) ("Where a plea of nolo contendere is tendered by the defendant and accepted by the court, it is

not the province of the court to occupy itself with the question of guilt or innocence."); Ferrelli v. Commonwealth, 783 A.2d 891, 893 (Pa. Cmwlth. Ct. 2001).[12]

---

[12] It is certainly true that in some contexts a *nolo* plea has the same legal effect as a guilty plea under Pennsylvania law. These situations, however, are distinguishable and entirely consistent with the Pennsylvania rule that a *nolo* plea is not an admission of guilt. See, e.g., Sontag v. Ward, 789 A.2d 778, 780 (Pa. Cmwlth. Ct. 2001) (explaining in the context of holding that requiring defendant to admit guilt to attend sex offender program did not violate right against self-incrimination that "a plea of nolo contendere is to be treated the same as a guilty plea"); Commonwealth v. Lewis, 791 A.2d 1227 (Pa. Super. Ct. 2002) (holding in context of post-sentence motion to withdraw a plea that a "'plea of *nolo contendere* is treated the same as a guilty plea'") (quoting Commonwealth v. Miller, 748 A.2d 733, 735 (Pa. Super. Ct. 2000)).

In addition, the instructions given at Poellnitz's sentencing hearing do not affect the *legal* consequences of the *nolo* plea. At the sentencing hearing on the charge of corruption of a minor, Poellnitz was specifically instructed and acknowledged that "there is no difference between a plea of guilty and a plea of *nolo contendere*," App. at 133, and that "by pleading guilty to these charges, you'll be in violation of that period of parole or

Thus, as a legal matter consideration of a *nolo contendere* plea as evidence of Poellnitz's *commission* of the underlying crime was improper. On remand, the District Court should consider whether there is sufficient evidence (under the preponderance of evidence standard) that Poellnitz violated a condition of supervised release. In conducting this inquiry, the District Court should take into account all evidence in the record, including, but not limited to, evidence presented at Poellnitz's plea hearing. What the District Court may not do, however, is treat the *nolo* plea as an admission by Poellnitz that he committed the crime.

### III.

Poellnitz contends that the delay of nearly two years between the filing of the supervised release violation petition and the occurrence of the supervised release violation hearing was not "reasonably necessary."[13] 18 U.S.C. § 3583 provides,

---

probation," id. at 132. These instructions, perhaps given erroneously, do not alter the legal status of the *nolo* plea—such a plea is not an admission of guilt under Pennsylvania law.

[13] We address this issue, despite our conclusion above that remand is warranted, because if Poellnitz is correct we must reverse and the District Court cannot reconsider on remand whether there is sufficient evidence of commission of a crime.

in pertinent part:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and . . . a further term of supervised release, extends beyond the expiration of the term of supervised release for any period *reasonably necessary* for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added). We exercise plenary review over questions of statutory interpretation. See United States v. Thayer, 201 F.3d 214, 219 (3d Cir. 1999).

In analyzing this question, the District Court found instructive the Seventh Circuit's decision in United States v. Rasmussen, 881 F.2d 395 (7th Cir. 1989). In Rasmussen, the court utilized the following factors in assessing whether the delay between the notice of probation action and hearing on the petition to revoke probation was a denial of due process: length of delay, reason for the delay, the probationer's assertion of his right, prejudice to the probationer, and the reason why the probationer was in

custody. Id. at 398 (citing Barker v. Wingo, 407 U.S. 514 (1972); United States v. Scott, 850 F.2d 316, 320 (7th Cir. 1988)). Unlike the present case in which Poellnitz alleges the delay violated the terms of § 3583(i), Rasmussen claimed the delay was a denial of due process. While Rasmussen may be distinguishable on these grounds and certainly does not provide a rigid and exclusive set of factors that a court may consider, the decision provides a useful framework for considering whether the delay was unreasonable. We conclude that it was not.

To begin, we reject Poellnitz's argument that the delay was not connected to the *federal* adjudication of the violation, but was solely related to the adjudication of state charges. Poellnitz's reliance on the Ninth Circuit's decision in United States v. Garrett, 253 F.3d 443 (9th Cir. 2001) is misplaced. In Garrett, the court held that § 3583(i) "refers to the *federal* adjudication of the defendant's supervised release violations [and] [t]hus . . . extends the jurisdiction of the federal court only to the period of time reasonably necessary to adjudicate pending supervised release revocation issues." Id. at 459 (emphasis added in Garrett). In other words, the jurisdiction of the federal court is extended to permit adjudication of the federal supervised release revocation issue. But such adjudication can include consideration of whether there was, as in this case, the commission of a state law violation. In fact, Garrett held that "postponement of . . . [the] revocation hearing until . . . release from state custody

did not violate § 3583(i)." Id. at 450.

In addition, we conclude that the delay in this case was not unreasonable. To begin, it was reasonable for the District Court to wait for the adjudication of the state court charges before proceeding with the revocation hearing. Although it is not necessary that the probationer be adjudged guilty of a crime to revoke release, see Manuszak, 532 F.2d at 317, it is certainly understandable that the District Court waited for adjudication of these state charges because it might be relevant in the revocation proceeding.

Furthermore, the subsequent decisions to reschedule the hearing were not unreasonable. The record does not reflect that Poellnitz objected to the District Court's *sua sponte* decisions to reschedule, and the docket reflects considerable activity during this time, including Poellnitz's motion for appointment of counsel and motion to dismiss the petition. Moreover, granting the Government's motions requesting rescheduling, which also appear to have been unopposed, was reasonable in light of the importance of Probation Officer Howard's testimony. Cf. Rasmussen, 881 F.2d 395 (7th Cir. 1989) (holding 13-month delay between notice of probation action and hearing on petition to revoke probation was not a denial of due process); Bennett v. Bogan, 66 F.3d 812, 818 (6th Cir. 1995) (noting that "although the lengthy delay [of five and one-half years] between the issuance and execution of the second warrant for Petitioner's arrest is lamentable, it does not rise to the level of intolerable").

11

The delay did not prejudice Poellnitz's ability to contest the validity of his revocation. Poellnitz makes general assertions about how having to defend himself in 2003 against incidents allegedly occurring in late 1999 and early 2000 "caused the prospect of dimmed memories, and the resulting possibility of inadequate cross examination." Appellant Br. at 29. Not only does Poellnitz not identify any specific "dimmed memories," but his argument fails to recognize that he was required to defend himself against these charges in 2003 in the state court proceedings, irrespective of the federal supervised release hearing. In addition, we are unpersuaded by Poellnitz's argument that he was prejudiced because he was unaware of the pending charges when he pled. At the plea hearing, Poellnitz was instructed on and acknowledged the potential impact of the plea on his supervised release status.[14]

****

For the foregoing reasons, the judgment of the District Court entered on October 3, 2003, as amended on October 9, 2003, will be reversed and remanded for further proceedings consistent with this opinion.

---

[14] The testimony provides, in pertinent part:

> THE COURT: Were you on parole or probation at the time these offenses occurred?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that by pleading guilty to these charges, you'll be in violation of that period of parole or probation and in addition to

any sentence I might impose upon you, that you would be subjecting yourself to an additional penalty?

> THE DEFENDANT: Yes.

App. at 132.