NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4240
_____

UNITED STATES OF AMERICA

v.

ARCADIO SANTIAGO, III,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-07-cr-00891-001)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2018

Before:   AMBRO, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: June 19, 2018)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

    Arcadio Santiago, III, appeals a five-month sentence of imprisonment for violating

the terms of his supervised release.  For the reasons that follow, we will affirm.

---

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

## I.  BACKGROUND

Santiago pled guilty to mail fraud in the United States District Court for the District of New Jersey and received a sentence of twenty-seven months of imprisonment, three years of supervised release, and restitution in the amount of $250,119.69.  On September 6, 2012, he was released from prison, subject to the terms of his supervised release, which included the standard condition that he not commit another crime during the term of supervision.  8 U.S.C. § 3583(d).  Within four months of his release, Santiago commenced another fraudulent scheme: from approximately January 2013 to May 2015, he submitted false claims for unemployment benefits to the State of New Jersey.

The law caught up with Santiago in June of 2015, with his arrest for Second Degree Theft by Deception under New Jersey Law.  He was detained in county jail.  A few days later, the United States Probation Office filed a petition with the District Court, alleging that he had violated the terms of his supervised release by committing another crime, and on June 22, 2015, the District Court authorized a warrant for his arrest.[1]

In December 2015, Santiago pled guilty to the New Jersey offense, but his sentencing did not occur until June 7, 2016, at which point the New Jersey Superior Court ordered a term of nine years of imprisonment and restitution in the amount of $219,424.  Between the time of his arrest and sentencing, Santiago was unable to post

---

[1] The Probation Officer's petition also alleged a second violation, citing Santiago's failure to pay his court-ordered restitution, which began shortly after his release from prison.  In May 2013, Santiago successfully petitioned the District Court to reduce his minimum restitution payments from $150 to $25 a month, citing his inability to pay, and he resumed payments.  That second violation was ultimately dismissed.

bail, and thus remained in county jail. After sentencing, he was moved to the New Jersey State Correctional System.

On the same day as his sentencing in state court, Santiago was arrested on the charge of violating his supervised release and was ordered by the District Court to appear for a hearing on that charge. Three days later, at that hearing, Santiago told the Court that he had pled guilty to the New Jersey crime and was already serving his state sentence. He said that he was prepared to plead guilty to the federal violation and proceed to sentencing, and he waived the production of a new presentence investigation report.

Before accepting his plea, the District Court conducted a colloquy to ensure that Santiago's plea was knowing, intelligent, and voluntary. The Court confirmed that Santiago had in fact committed another crime while on supervised release, that defense counsel had explained the punishment he faced for violating the terms of his supervised release, and, specifically, that Santiago understood he "face[d] additional jail time [and] it does not have to be concurrent [to his state sentence]. In fact, in general, [a] sentence from [the District] Court for violation of supervised release … would not be concurrent." (App. at 94.)

The Court ultimately accepted his guilty plea and, at Santiago's request, proceeded to sentencing. It invited counsel to present arguments regarding a proposed sentence, including any mitigating or aggravating factors. Santiago's counsel stated that the advisory range for a Grade B violation under the United States Sentencing Guidelines (the "guidelines") was four to ten months of incarceration, and she requested a sentence somewhere within that range. She then stated, "the real issue in this case is whether or

not the sentence is … consecutive or concurrent with the State matter." (App. at 96.) Although acknowledging that the Court might have "serious concerns about recidivism issues" and thus be inclined "to impose a serious sentence under the circumstances," (App. at 98,) she argued that a consecutive sentence could render Santiago ineligible for parole under New Jersey law. After hearing the parties' initial arguments on that issue, the Court said, "this case seems to call for a … consecutive sentence of some sort," (App. at 102,) but it adjourned the hearing to allow the parties time to investigate and brief the parole issue that Santiago had raised.

On November 17, 2016, the sentencing hearing continued. Santiago's counsel candidly represented that, under New Jersey law, "the [federal] detainer itself cannot be a basis to deny parole," (App. at 108,) but she argued that the delay in sentencing and an outstanding detainer would have a practical effect on the amount of time Santiago ultimately served on his state court sentence. As to the former, she explained that, although he received a credit against his state court sentence for the days he served in county jail, under New Jersey Law he was ineligible for "commutation or good time credits" until he entered state prison, in June 2015. (App. at 109.) As to the latter, she explained that, if the Court were to impose a consecutive federal sentence, the outstanding detainer would likewise impede Santiago's ability to achieve more favorable "reduced" or "minimum" custody status within state prison and make him less likely to be granted parole. (App. at 108-10.) She therefore argued against a consecutive sentence because, as a practical matter, it would adversely affect Santiago's chances of serving a

4

shorter state prison sentence through parole or a combination of additional status-based credits against his sentence.

The District Court ultimately rejected Santiago's arguments. It revoked supervised release and sentenced Santiago to a consecutive term of five months of imprisonment. The Court also imposed a two-year term of supervised release, which it considered "necessary because [it was] concerned about his repeat habit." (App. at 119.) Neither party objected to that sentence. Santiago has timely appealed.

## II.    DISCUSSION[2]

On appeal, Santiago raises three challenges to his sentence. First, he claims that it is procedurally unreasonable because the District Court failed to explain its reasons for imposing a consecutive sentence and otherwise failed to adequately address the applicable sentencing factors. Second, he claims that a consecutive sentence is substantively unreasonable for the same reason. Third, he claims that his due process rights were violated and that he was prejudiced by a sixteen month delay in sentencing. None of those arguments is persuasive.

---

[2] The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

5

## A.    Santiago's Procedural and Substantive Challenges[3]

Santiago does not contest the District Court's power to impose a consecutive sentence of imprisonment, but rather asserts that the Court was required to "review the § 3553(a) factors, and cite clear reasons why a term of supervised release must be imposed," which "the District Court completely skipped[.]"  (Opening Br. at 15.)  He misunderstands the Court's obligation.

Section 3583(e) provides that a court may, after considering certain enumerated factors listed in § 3553(a), "revoke a term of supervised release, and require the

---

[3] We have articulated our standard of review in similar cases as follows:

> This Court reviews the procedural and substantive reasonableness of a district court's sentence upon revocation of supervised release for abuse of discretion. Procedurally, the sentencing court must give "rational and meaningful consideration" to the relevant § 3553(a) factors.  Where procedural reasonableness turns on a question of statutory interpretation, we conduct plenary review of the meaning of the statute.  If a sentencing court followed the appropriate procedures in imposing the sentence, we then look to whether the sentence itself was substantively reasonable. Substantive reasonableness inquires into "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." Absent procedural error, we will affirm … "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."

*United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011) (quoting *United States v. Doe*, 617 F.3d 766, 769-70 (3d Cir. 2010)).  At sentencing, Santiago did not challenge the adequacy of the court's analysis of the relevant sentencing factors or assert that his sentence was unreasonable.  We review unpreserved challenges for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014).  To prevail, Santiago "must show that there is '(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Poulson*, 871 F.3d 261, 270 (3d Cir. 2017) (citation omitted).

defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release" if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" 18 U.S.C. § 3583(e)(3). There is no requirement that the district court make detailed findings on each of the sentencing factors before revoking supervised release. It need only "state on the record its *general* reasons" for doing so, *United States v. Blackston*, 940 F.2d 877, 894 (3d Cir. 1991), and give "meaningful consideration to the mitigation factors" advanced by the defendant, *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2010). *See also United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006) ("There are no magic words that a district judge must invoke when sentencing, but the record should demonstrate that the court considered the § 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record."), *abrogated in part on other grounds by Rita v. United States*, 551 U.S. 338 (2007).

Chapter Seven of the guidelines gives guidance on revoking supervised release, including recommended ranges of imprisonment. U.S.S.G. § 7B1.4. It provides that "[a]ny term of imprisonment imposed upon the revocation of … supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving[.]" U.S.S.G. § 7B1.3(f). We have said that, consistent with the guidelines' policy statements, "the primary purpose of a sentence for the violation of supervised release is to sanction the defendant's breach of trust," *Young*, 634 F.3d at 241, which courts may consider when fashioning a sentence for a violation of supervised release.

7

Moreover, the Supreme Court has instructed that "when a judge decides simply to apply the guidelines to a particular case, doing so will not necessarily require lengthy explanation," and that the "brevity or length" necessarily depends on the arguments raised in a particular case. *Rita*, 551 U.S. at 356. We have said that "it [is] difficult to conceive a scenario where a district court's reference to a particular § 3553(a)(2)(A) factor would render a within-guideline range sentence unreasonable *per se*," and we have rejected a similar challenge when it was "evident that the District Court … was motivated to sanction the repeated breaches of trust that occurred so soon after [the defendant's] release from custody." *Young*, 634 F.3d at 241.

The record here demonstrates that the District Court gave meaningful consideration to the applicable sentencing factors and goals of supervised release, as well as to Santiago's arguments against a consecutive sentence. Before accepting the guilty plea, the Court confirmed Santiago's understanding that he faced an additional term of imprisonment and stated that the Court was inclined to impose a consecutive sentence, consistent with the guidelines' recommendation. Santiago, through counsel, requested a sentence within the guidelines range, and argued that "the real issue" before the Court was whether that sentence was to be served concurrently or consecutively. (App. at 96.) That was the only argument made in mitigation, and the Court considered it over the course of two hearings. Indeed, after the parties' initial arguments, the Court continued the hearing to allow Santiago's counsel to further research and brief the issue for the Court's consideration.

8

The record further reflects that the Court imposed a consecutive sentence for at least three reasons. First, having found that the evidence substantiated a Grade B violation, it considered that the statutory maximum sentence was two years of imprisonment and that Santiago's recommended guidelines sentence was four to ten months of imprisonment. Second, it considered Santiago's criminal history and the related concern that he was a repeat offender who had committed another offense shortly after beginning supervised release. Third, and finally, it considered Santiago's statements and the issues that his counsel had "raised so carefully," but it ultimately concluded that his "repeated violations undercut" any argument that his sentence should be served concurrently in state prison. (App. at 118.) Thus, although not listing them by name, the Court did consider the applicable sentencing factors as well as Santiago's breach of trust by committing another offense within months of commencing supervised release. In short, the record adequately reflects the Court's reasons for imposing a consecutive sentence of five months' imprisonment, which was at the low end of the guidelines range. Thus, we perceive no abuse of discretion, let alone plain error that would render Santiago's sentence procedurally unreasonable.

Having concluded that he failed to show procedural error, Santiago's substantive challenge, which relies on essentially the same argument, necessarily fails. *See Young*, 634 F.3d at 243 (rejecting appellant's challenge to the substantive reasonableness of his sentence because it was premised on an unsubstantiated procedural error).

## B. Santiago's Due Process Challenge

We also reject Santiago's argument that the delay in sentencing constituted a denial of due process. He concedes that a revocation hearing is not a criminal prosecution and therefore does not trigger the "full panoply of rights which attach during a criminal trial, including the Sixth Amendment's guarantee of a speedy trial." (Opening Br. at 30 (internal quotation marks and citation omitted).) A revocation hearing, however, does affect the defendant's liberty interests, triggering limited protections under the Due Process Clause. *Morrissey v. Brewer*, 408 U.S. 471, 484-90 (1972); *see also United States v. Poellnitz,* 372 F.3d 562, 570 (3d Cir. 2004) (reviewing reasonableness of two-year delay between violation of supervised release petition and revocation hearing based on the length of delay, the reason for the delay, the defendant's assertion of his right, prejudice to the defendant, and the reason the defendant was in custody). Federal Rule of Criminal Procedure 32.1 states that a court must hold a revocation hearing "within a reasonable time[.]" Fed. R. Crim. P. 32.1(b)(2). We have said that it is "reasonable for the District Court to wait for the adjudication of … state court charges before proceeding with [a] revocation hearing." *Poellnitz*, 372 F.3d at 571.

Santiago's claim that he suffered a sixteen-month sentencing delay elides important facts. The revocation hearing was held within three days of his state-court sentencing, and the District Court continued the hearing at Santiago's request – to allow his counsel to further develop an argument in mitigation of his sentence. During the approximately five months that lapsed between his revocation hearing and sentencing, Santiago was in state custody, and any delay did not subject him to an excessive sentence

10

or otherwise prejudice his ability to defend himself on the violation of supervised release. He accordingly was not denied due process.

## III. CONCLUSION

For the foregoing reasons, we will affirm.