**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2427
_____

UNITED STATES OF AMERICA

v.

THOMAS CLAY WADE,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:10-cr-00201-001)
U.S. District Judge:  Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2025
_____

Before: SHWARTZ, FREEMAN, and SMITH, Circuit Judges.

(Filed: January 12, 2026)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1

SHWARTZ, Circuit Judge.

Thomas Wade appeals the finding that he violated the conditions of his supervised release. Because good cause existed for admitting the out-of-court statements that supported that finding, and those statements and other evidence establish that he violated his release conditions, we will affirm.

I

Wade was convicted of violating the federal firearms and drug laws, sentenced to 240 months in prison, and ordered to serve six years of supervised release. conditions of supervised release required, among other things, that he commit no other federal, state, or local crimes, and that he not unlawfully possess or use a controlled substance.

While Wade was on supervised release, the victim, his girlfriend at the time, accused him of assault. The victim was discovered in distress outside a nursing home, and Emergency Medical Technicians responded. She told the EMTs that she was eight months pregnant, Wade struck her in the stomach, she was in pain, and she believed she was in labor.[1] She was taken to the hospital, where she again stated Wade "str[uck] her in the abdomen." App. 179. According to the medical records, the victim was impaired, having tested positive for cocaine and made inconsistent statements about marijuana use and attempting suicide, and was twenty weeks pregnant, not eight months as she had told the EMTs. Her admitting diagnosis was "being struck in the abdomen," and her

---

[1] The body camera video shows that the victim's head bobbed up and down. Although the parties dispute whether she was "nodding off" during the conversation with the EMTs and officers, an EMT noted that the movement of her head was not consistent with someone who was "nodding off." App. 119-20.

discharge diagnoses included "[a]ssault" and "[t]rauma." App. 179, 453.

The victim provided the police with a physical description of Wade and told them that he had taken her working phone, but she showed them a photograph of Wade on a second phone. The police thereafter filed state aggravated assault charges against Wade.

About one month later, Wade's probation officer informed him about the state charges and that there was a warrant for his arrest. Wade was "surprised" and told her that "he would turn himself in," but he did not do so and stopped responding to his probation officer's messages. App. 124-25. The day after learning of the state charges, however, Wade messaged the victim on social media, asking if she "put a fake case on" him by reporting that he punched her in the stomach. App. 490-91.

Before the incident with the victim, Wade tested positive on three occasions for cannabinoids. He informed his probation officer that he used marijuana to cope with personal losses that year, including the deaths of his daughter and mother. He attended therapy but stopped participating around the time he ceased contact with his probation officer.

Months later, Wade was arrested on the state assault charges.[2] In addition, the Probation Office filed a petition to revoke Wade's supervised release, alleging that he (1) committed aggravated assault, in violation of the condition that he commit no federal, state, or local crime, a Grade A violation, and (2) used drugs, in violation of the condition

---

[2] These charges were dismissed before the revocation hearing.

3

that he not unlawfully possess or use a controlled substance, a Grade B violation.[3]

Before Wade's revocation hearing, the Government attempted to contact the victim by phone call, text message, and email, and learned that she had left the state. In a brief conversation with the Government, she said Wade "did not do anything" and hung up. App. 546. The Government served her with a subpoena, but she did not appear at the hearing.

At the hearing, Wade admitted to the drug use violation but disputed the assault charge. The Government sought to prove the assault using: (1) testimony of an EMT who treated the victim and Wade's probation officer; (2) body camera footage from the officer who responded to the EMT's call for assistance; (3) the victim's medical records; (4) the social media conversation between Wade and the victim; (5) the discharge letter from Wade's therapy program; and (6) the state court docket regarding the state assault charge.

The District Court concluded that the Government had tried to secure the victim's attendance at the hearing, and the Court considered Wade's interest in confronting the witness and found good cause to admit the victim's hearsay statements through the testimony and records of the police and medical personnel.[4] Based on that testimony and

---

[3] Wade had violated his supervised release conditions on another occasion by strangling his wife.

[4] The District Court distinguished this case from United States v. Lloyd, 566 F.3d 341, 346 (3d Cir. 2009), because here the Government presented "independent corroboration of numerous details of the victim's accusation, including the bodycam footage of the police interview of the victim, the hospital records[,] and the in-court testimony of the EMT." App. 9. In Lloyd, the hearsay statements came from a violation

4

other evidence, the Court (1) found that Wade committed simple but not aggravated assault when he struck the victim in the stomach, which, like his admitted drug violation, is a Grade B violation, and (2) sentenced Wade to eighteen months' imprisonment and three years' supervised release.

Wade appeals.

## II[5]

Wade argues that (1) the District Court's reliance on the victim's out-of-court statements to support his assault conviction violated his due process right to confront adverse witnesses, and (2) insufficient evidence supported the assault finding. Neither argument has merit.

## A[6]

Although "[n]either the Confrontation Clause of the Sixth Amendment nor the Federal Rules of Evidence apply in supervised release revocation hearings," United States v. Rose, 152 F.4th 153, 157 (3d Cir. 2025), individuals accused of violating their

---

report and warrant petition that contained multiple levels of hearsay, "lack[ed] detail," and were "unsworn," "cursory," and uncorroborated by the record. 566 F.3d at 345-46.

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[6] We review the admission of the hearsay evidence for abuse of discretion. Lloyd, 566 F.3d at 344. Wade did not waive his hearsay objection by failing to raise it at the hearing because the parties fully briefed the issue in their post-hearing submissions, so each side had a chance to present its position, and the District Court had an opportunity to consider them before ruling. United States v. Dowdell, 70 F.4th 134, 140-41 (3d Cir. 2023); see also United States v. Price, 458 F.3d 202, 206 (3d Cir. 2006) ("The purpose of requiring contemporaneous objection . . . is to ensure that the trial court has an opportunity to consider and rule on disputed questions of law. When an issue has been raised, and a ruling made, that purpose is served.").

release conditions are entitled to "minimum requirements of due process," which are set forth in Federal Rule of Criminal Procedure 32.1(b) and include "the right to confront and cross-examine adverse witnesses (unless the hearing officers specifically find good cause for not allowing confrontation)," Morrissey v. Brewer, 408 U.S. 471, 489 (1972); Fed. R. Crim. P. 32.1(b). This right is not absolute. Rather, to determine whether to admit a hearsay statement, a court "balance[s] the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." United States v. Lloyd, 566 F.3d 341, 344-45 (3d Cir. 2009) (quoting Fed. R. Crim. P. 32.1(b)(2)(C) advisory committee's note to the 2002 amendment).

We first address Wade's interest in confronting the witness. The "reliability of [the] proffered hearsay is a principal factor" affecting the strength of an individual's confrontation interest. Id. at 345. In evaluating a hearsay statement's reliability, courts consider, among other things, (1) whether the statement was given under oath or is independently corroborated, id., and (2) whether the declarant made the statement shortly after the alleged incident occurred in an excited state, United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001) (explaining that "excitement suspends the declarant's powers of reflection and fabrication"); see also United States v. Martin, 382 F.3d 840, 846 (8th Cir. 2004) (deeming reliable testimony relaying victim's hearsay statements, which were corroborated by her wounds and made in an "excited and distressed" state); United States v. Kelley, 446 F.3d 688, 690, 692 (7th Cir. 2006) (same).

A hearsay statement is viewed as less reliable when, among other things: (1) it contains multiple layers of hearsay, (2) the declarant has an "adversarial" relationship

6

with the releasee that could impact the veracity of the statement, (3) the witness who testified about the out-of-court statement did not personally observe the declarant's demeanor when the statement was made, or (4) the statement was "cursory." See, e.g., Lloyd, 566 F.3d at 345-46; United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995) (holding that unsworn allegations made to an officer in a telephone interview were not reliable, in part because the officer did not observe declarant's "demeanor during the interview and therefore could not form any opinion as to her veracity").[7]

Here, the Government's proffered hearsay contains some indicia of reliability. First, an EMT testified that the victim was in visible pain. This corroborates that she was injured. Second, the victim identified Wade as her assailant shortly after she said that she was struck, when she was likely to be in an excited state. Third, the testifying EMT witnessed the victim's statements firsthand and could personally assess her credibility, as could the District Court through the body camera footage, cf. Fennell, 65 F.3d at 813, and her receipt of treatment for this pain corroborates that some physical injury occurred,[8] see Martin, 382 F.3d at 846.

Based on these facts, we cannot conclude that the District Court abused its discretion in concluding that the victim's statements were somewhat reliable. This

---

[7] See also United States v. Comito, 177 F.3d 1166, 1171-72 (9th Cir. 1999) (holding that a woman's "unsworn verbal allegations" that her ex-boyfriend used her credit cards without authorization were unreliable and required corroboration to overcome the releasee's interest in confronting adverse witnesses).

[8] Although the victim's altered mental state, her somnolence while interacting with medical providers, and the inconsistency of her statements on other topics provide reason to scrutinize the reliability of her statements, the District Court had other evidence to support the statements' reliability.

conclusion, together with the Court's finding that Wade's social media outreach was less than benign provides a basis to conclude that Wade's confrontation interest is diminished. See United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006) (noting the "little, if any, weight" given a defendant's confrontation interest "where the declarant's absence is the result of intimidation by the defendant")

The Government has also demonstrated good cause for the victim's nonappearance. The record shows that (1) the Government attempted to contact the victim through numerous channels and sent her a subpoena,; (2) the victim did not appear at the state proceeding; (3) the victim refused to testify in this case; and (4) Wade's social media comments showed his displeasure with the victim, which may have impacted her willingness to appear. See Lloyd, 566 F.3d at 346; see also Martin, 382 F.3d at 845-46 (concluding there was good cause for absence of declarant who had refused to testify in related state charges, thereby indicating her unwillingness to testify at the revocation hearing); United States v. Martin, 371 F.3d 446, 449 (8th Cir. 2004).

Thus, because the victim's hearsay statements bore indicia of reliability and the Government had good cause for failing to produce her at the hearing, the District Court did not abuse its discretion in admitting the hearsay evidence.

B[9]

---

[9] We review a finding of sufficient evidence to establish a violation of a condition of supervised release for clear error, United States v. Poellnitz, 372 F.3d 562, 565 n.6 (3d Cir. 2004), and we review legal questions de novo, United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008). Although the parties disagree about whether Wade preserved his sufficiency argument and that plain error applied, under even the more lenient standard, Wade's argument fails.

The Government also proved by a preponderance of the evidence, 18 U.S.C. § 3583(e)(3),[10] that Wade committed simple assault under 18 Pa. Cons. Stat. § 2701(a)(1). This crime requires proof that: (1) the defendant caused bodily injury to the victim; and (2) the defendant's conduct was intentional, knowing, or reckless. 18 Pa. Cons. Stat. § 2701(a)(1).

The record contains this proof. The victim reported that Wade struck her and was in pain, and the medical records describe her complaints. Although she recanted her accusation, the District Court reasonably observed that such behavior was "not uncommon in domestic violence situations," and she consistently identified Wade as the assailant "in the timeframe immediately after the incident." App. 614. Finally, striking the stomach of a pregnant woman is at least reckless. Cf. Commonwealth. v. Moore, 395 A.2d 1328, 1332 (Pa. Super. Ct. 1978) (noting that circumstantial evidence may support recklessness and affirming aggravated assault conviction for "large man, weighing 265 pounds" who beat his seven-year-old stepson). Accordingly, the evidence supports the finding that Wade violated the condition of supervised release that forbade him from committing a state crime.

## IV

For the foregoing reasons, we will affirm.

---

[10] See also United States v. Poellnitz, 372 F.3d 562, 566 (3d Cir. 2004) (observing that a court need only "be reasonably satisfied that he has violated one of the conditions" of a defendant's release to revoke it (quoting United States v. Manuszak, 532 F.2d 311, 317 (3d Cir. 1976)).