**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1513
_____

UNITED STATES OF AMERICA

v.

JOSEPH YOUNG,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:07-cr-00156)
District Judge:  Honorable Nora Barry Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2011

Before:  SCIRICA, BARRY and VANASKIE, *Circuit Judges*

(Filed: March 10, 2011)
_____

Candace Cain, Esq.
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
        *Counsel for Appellant*


.
Robert L. Eberhardt, Esq.
Donovan Cocas, Esq.
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION

_____

VANASKIE, *Circuit Judge*.

The principal issue presented on this appeal is whether a court may consider the factors listed in 18 U.S.C. § 3553(a)(2)(A) – "the seriousness of the offense, . . . respect for the law, and . . . just punishment for the offense" – when imposing a sentence for the violation of the conditions of supervised release. Concluding that a court is not prohibited from considering the § 3553(a)(2)(A) factors in the supervised release revocation context, we will affirm the District Court's judgment.

I.

From December 4, 2003 to September 7, 2005, Appellant Joseph Young went on a forged-check-cashing spree, enlisting the assistance of several individuals to present bogus checks in exchange for a share of the proceeds. On September 22, 2005, he was sentenced in the Cambria County Court of Common Pleas on twenty separate charging instruments. The sentence on one of the charging instruments included a prison term of thirty to sixty months, which was later reduced to 273 days to twenty-four months, less one day. He was released on parole on February 13, 2006.

Undeterred by the criminal justice sanctions imposed and the fact that he was under the supervision of state parole and probation authorities, Young quickly reverted to passing counterfeit checks. On July 8, 2006, Young, with the aid of Jeanne Hooter, unsuccessfully attempted to pass a counterfeit check at a JC Penney department store at the Pittsburgh Mills Mall. This incident garnered the attention of federal law enforcement authorities. On April 17, 2007, Young and Hooter were indicted on a charge of conspiracy to make, utter, and possess counterfeit securities of an organization involved in interstate commerce, in violation of 18 U.S.C. § 371. On October 16, 2007, Young entered a plea of guilty to the conspiracy count pursuant to a written agreement. The plea agreement included several stipulations concerning such matters as the amount of loss and acceptance of responsibility. The parties further stipulated that "no other enhancements or reductions in the offense level apply." (A. 50-4.) The plea agreement also included an appeal and collateral challenge waiver.

As a result of the parties' stipulations, Young's conduct resulted in an offense level of eight. Young's prior criminal history netted sixteen points, placing him in criminal history category VI. Young's resulting advisory guideline range for imprisonment was eighteen to twenty-four months.[1]

Young's sentencing proceeding convened on February 22, 2008. Young did not object to any of the factual findings presented in the PSR. After considering all the pertinent factors, the District Court imposed a prison term of twenty-four months, restitution in the amount of $384.74, and a supervised release term of three years. Among the conditions of supervised release, Young was not to commit another federal, state, or local crime, and was to refrain from the possession or use of any controlled substance.

Young commenced his supervised release term at the end of September 2008. He made his initial report to the Probation Office in the Western District of Pennsylvania on October 10, 2008. At that time, he tested positive for use of cocaine and acknowledged having used cocaine the prior day. The Probation Office recommended that no action be taken

---

[1] According to the Presentence Investigation Report ("PSR"), but for the parties' stipulations, Young would have received an offense enhancement of two levels for use of an access device, pursuant to U.S.S.G. § 2B1.1(b)(10)(B)(i), and two additional levels under U.S.S.G. § 3B1.1(c) for his role as a leader. Inclusion of these offense level adjustments would have resulted in an advisory guideline range of thirty to thirty-seven months' imprisonment.

4

based upon the admitted use of cocaine, and the District Court concurred with the recommendation.

On November 6, 2008, less than one month after supervision commenced, Young was arrested in Blair County, Pennsylvania, on charges of forgery, escape, resisting arrest, false reports to law enforcement, and false identification to law enforcement. On November 24, 2008, the District Court ordered that a bench warrant be issued for Young's arrest for violation of the terms of supervised release, with the warrant to be lodged as a detainer at the Blair County Prison.

Disposition of the supervised release violations was deferred pending the outcome of the state charges in Blair County. Young was sentenced by the state court to a prison term of ten to twenty-three and one-half months. Upon his parole from the state sentence, Young was taken into federal custody to answer for the violation of the terms and conditions of supervised release.

Young's supervised release revocation proceeding convened on January 29, 2010. Young acknowledged violating the terms and conditions of supervised release based upon the state court conviction. Finding that Young's conduct constituted a "Grade B" violation, the District Court, in accordance with U.S.S.G. § 7B1.3(a)(1), revoked Young's supervised release. Young's advisory guideline imprisonment range was determined to be twenty-one to twenty-seven months. *See id.* § 7B1.4(a). Because, however, Young's original federal conviction was classified as a Class D felony, the statutory maximum term of imprisonment was twenty-four months. *See* 18 U.S.C. § 3583(e)(3).

Acknowledging that the guideline range was advisory only, the District Court afforded defense counsel ample opportunity to substantiate Young's request for a prison term well below the advisory guideline range. Defense counsel urged that Young's latest encounter with the criminal justice system was the product of his substance abuse problems. Young also presented evidence that four persons in the local community, including a Magisterial District Judge, were willing to provide assistance to him.

The government recommended a prison term of twenty-four months, without any period of supervised release to follow. The government argued that such a sentence was necessary in view of Young's recidivism and continued drug use. The government also asserted that restitution had been made by his co-defendant, Jeanne Hooter, and not by Young. In conclusion, the government argued that a sentence of twenty-four months would at least safeguard the public for that period of time.

In rebuttal, defense counsel argued that a prison term of twenty-four months would not advance any of the applicable sentencing factors and would ignore the substantial role that Young's substance abuse problems played in his criminal history. Defense counsel also emphasized that Young had the support of four prominent members of the community, and argued that Young and society would be better served by placing Young on supervision.

Ultimately, the District Court decided to impose a prison term of twenty-four months, to be followed by a twelve-month term of supervised release. In explaining its rationale for the sentence, the District Court stated:

Now, in making the factual findings relevant to your sentence, I did give meaningful consideration to the factors set out under Title 18, United States Code, Section 3553(a). And here, you clearly violated the terms of your supervised release, there's no question about that. You committed these crimes not more than six weeks after your release from custody. And once again, you were back using cocaine.

And as you and I well know, . . . you have a very long history, despite the fact that it doesn't go back that many years in terms of chronology. And you've been involved with forging documents, and bad checks, and altering ID's. And a lot of this stems from cocaine and alcohol addiction.

But the other thing that bothered me when I sentenced you initially was it was my sense, and it's still my sense, that you preyed on others relative to cocaine and alcohol addictions. And so that was something else that was troubling to this Court.

I also have to try to deter you from future criminal conduct, and I'm concerned that even with these four friends of yours who stood up and tried to cover your back, and your mom and your brother, you had some of these resources available to you when you got out the last time, and within six weeks you were out doing crimes again. And you tell me, and everyone else tells

me, you need drug and alcohol counseling treatment. . . .

As also [has] been pointed out, the restitution has been paid, but . . . it was the co-defendant who [made] the payment. . . .

So, considering all of these factors, Mr. Young, and considering the fact that you're [sic] criminal history was remarkable, and usually it was the same behavior, and it was spread over various counts, despite the fact that you had a college education, the job skills, at one time you owned your own business, that you went right back out and broke the law again. So, I'm not sure, you know, whether supervision in and of itself, or probation in and of itself, or anything else would stop you from doing what you've done in the past, unless you have been, in my estimation, treated and corrected.

So, I believe that the sentence [of twenty-four months' imprisonment] . . . meets the sentencing objectives by reflecting the seriousness of the violations, promoting respect for the law, and providing just punishment.

(A. 149-150.)

After the sentence was pronounced, Young, through his counsel, objected on the grounds that the District Court (a) had improperly taken into consideration the § 3553(a)(2)(A) factors; (b) did not have a proper evidentiary foundation for

8

its finding that Young had preyed on other people; (c) had erred in finding that co-defendant Hooter had paid restitution, when, in fact, it was Young's mother who had given the money to Hooter to make restitution; and (d) failed to give adequate weight to mitigation factors and rehabilitation needs. The District Court rejected Young's renewed entreaty for a lesser sentence. This appeal followed.

## II.

The District Court had jurisdiction by virtue of 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Our standard of review in the context presented here was recently articulated as follows:

> This Court reviews the procedural and substantive reasonableness of a district court's sentence upon revocation of supervised release for abuse of discretion. Procedurally, the sentencing court must give "rational and meaningful consideration" to the relevant § 3553(a) factors. Where procedural reasonableness turns on a question of statutory interpretation, we conduct plenary review of the meaning of the statute. If a sentencing court followed the appropriate procedures in imposing the sentence, we then look to whether the sentence itself was substantively reasonable. Substantive reasonableness inquires into "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." Absent procedural error, we will affirm the sentencing

9

court "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."

*United States v. Doe*, 617 F.3d 766, 769-70 (3d Cir. 2010) (citations omitted).

## III.

Young argues that the District Court committed three procedural errors that combined to result in a substantively unreasonable sentence. Specifically, Young contends that the District Court was precluded from imposing a sentence that, in the District Court's words, "meets the sentencing objectives by reflecting the seriousness of the violations, promoting respect for the law, and providing just punishment." (A. 150.) The second procedural error posited by Young concerns the District Court's findings that Young appeared to have a proclivity to prey on alcoholics and drug addicts to facilitate the negotiation of bogus checks and had not satisfied his restitution obligation. The final asserted procedural error is the District Court's purported failure "to give meaningful consideration to defense arguments and a proposal for rehabilitation." (Appellant's Br. at 15.) Each alleged procedural error will be considered in turn.

## A.

Young contends that his sentence is procedurally unreasonable because Congress has precluded consideration of the § 3553(a)(2)(A) factors in the context of a supervised release revocation proceeding. Young's argument presents a

question of statutory interpretation, over which our review is plenary. *See Doe*, 617 F.3d at 769-70.

Revocation of supervised release is governed by 18 U.S.C. § 3583(e), which, in pertinent part, provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) –
>
> . . . .
>
> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

Young argues that because § 3553(a)(2)(A) is not one of the sentencing factors listed in § 3583(e), the District Court committed reversible error by mentioning the seriousness of the violation, along with the need to promote respect for the law and to provide just punishment, in the rationale for its sentence.

We have not previously addressed the precise question presented here. We have, however, suggested that consideration of the gravity of the violation of supervised release – a § 3553(a)(2)(A) factor – is not prohibited. *See*

11

*United States v. Bungar*, 478 F.3d 540, 544 (3d Cir. 2007) ("Sentence is imposed for violations of supervised release primarily to sanction the defendant's breach of trust *while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator*." (emphasis added) (internal quotation marks omitted)). In *Bungar*, we also acknowledged that the Court of Appeals for the Second Circuit has held that the omission of § 3553(a)(2)(A) from § 3583(e) "does not foreclose a court from considering 'other pertinent factors,' such as the need for the sentence to reflect 'the seriousness of the offense.'" *Id.* at 543 n.2 (quoting *United States v. Williams*, 443 F.3d 35, 47-48 (2d Cir. 2006)). The Sixth Circuit subsequently agreed with the holding in *Williams*. *See United States v. Lewis*, 498 F.3d 393, 399-400 (6th Cir. 2007). We now confront directly the question of whether consideration of the § 3553(a)(2)(A) factors in the revocation context is prohibited, and join the Courts of Appeals for the Second and Sixth Circuits in holding that a district court does not commit procedural error in taking into account those factors when imposing a sentence for the violation of supervised release.

As the Second Circuit explained in *Williams*, the enumeration in § 3583(e) of specified subsections of § 3553(a) that a court *must* consider in revoking supervised release does not mean that it may not take into account any other pertinent factor. 443 F.3d at 47. Furthermore, because a court, in revoking supervised release, must take into consideration "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), and "to protect the public from

12

further crimes of the defendant," *id.* § 3553(a)(2)(C), "§ 3583(e) cannot reasonably be interpreted to exclude consideration of the seriousness of the releasee's violation," *Williams*, 443 F.3d at 48. Indeed, the "nature and circumstances of the offense," a mandatory revocation consideration under § 3583(e), necessarily encompasses the seriousness of the violation of supervised release.

In *Lewis*, the Sixth Circuit agreed that the omission of § 3553(a)(2)(A) from § 3583(e) does not foreclose consideration of the factors listed in the former section, and that the § 3553(a)(2)(A) factors are "essentially redundant with matters courts are already permitted to take into consideration when imposing sentences for violation of supervised release." 498 F.3d at 400. The Sixth Circuit found additional support for its conclusion in United States Sentencing Commission policy statements. Writing for the court, Judge McKeague explained:

> [I]n the official introduction to the policy statements regarding supervised release, the Sentencing Commission explains that "the sentence imposed upon revocation . . . [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision." Thus, although violations of supervised release generally do not entail conduct as serious as crimes punishable under the § 3553(a) regime, revocation sentences are similarly intended to "sanction," or, analogously, to "provide just punishment for the offense" of violating supervised release. Given that the three considerations in § 3553(a)(2)(A)

13

are consistent with considerations already permissible for revocation sentences, the fact that § 3583(e) does not require that courts consider § 3553(a)(2)(A) does not mean that courts are forbidden to consider that factor, and the fact that a sentencing court does consider § 3553(a)(2)(A) is not error.

*Id.* (citation omitted).

Young relies upon case law from the Ninth Circuit to support his contention that the District Court in his case was prohibited from taking into account the § 3553(a)(2)(A) factors. (Appellant's Br. at 17-18 (citing *United States v. Hammons*, 558 F.3d 1100, 1104 (9th Cir. 2009)).) In *Hammons*, which involved a district court's complete failure to provide any reasons for the defendant's sentence upon revocation of supervised release, the Ninth Circuit observed that a district court is not to consider the § 3553(a)(2)(A) factors, citing *United States v. Miqbel*, 444 F.3d 1173, 1181-82 (9th Cir. 2006), and *United States v. Simtob*, 485 F.3d 1058, 1063 (9th Cir. 2007). *Hammons*, 558 F.3d at 1104. *Miqbel* reasoned that because "§ 3553(a)(2)(A) is a factor that Congress deliberately omitted from the list applicable to revocation sentencing, relying on that factor when imposing a revocation sentence would be improper."[2] 444 F.3d at 1182. Significantly, however, the court in *Miqbel* went on to state that it would be unreasonable for a district court to place

---

[2] *Miqbel* did not cite *Williams*, which was decided on March 22, 2006, less than one month before the decision in *Miqbel* was issued.

"primary" reliance upon a § 3553(a)(2)(A) factor, stating that "[w]e do not suggest that a mere reference to promoting respect for the law would in itself render a sentence unreasonable." *Id.*

Buttressing the conclusion that the Ninth Circuit did not make reliance upon a § 3553(a)(2)(A) factor improper *per se* is the rationale articulated in *Simtob*. Explaining the limited nature of its holding in *Miqbel*, the court in *Simtob* wrote:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation. The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator. . . .
>
> To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse. The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community. A history of, for example, drug-related offenses, combined with a drug-related offense underlying the revocation, as is the case here, creates a greater likelihood that the violator will

15

relapse into the same or similar criminal activity. A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command. Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity. *Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.*

*Simtob*, 485 F.3d at 1062-63 (emphasis added) (citations omitted).

The Ninth Circuit's explication in *Simtob* is consistent with the reasoning articulated by the Second Circuit in *Williams* and the Sixth Circuit in *Lewis*: the mere omission of § 3553(a)(2)(A) from the mandatory supervised release revocation considerations in § 3583(e) does not preclude a court from taking into account the seriousness of the conduct underlying the supervised release revocation or the need for the resulting sentence to promote respect for the law and

16

provide just punishment. To hold otherwise would ignore the reality that the violator's conduct simply cannot be disregarded in determining the appropriate sanction. Indeed, the United States Sentencing Commission Guidelines take into account the seriousness of the violation of supervised release by setting lengthier guideline ranges for offenses classified as more serious. *See* U.S.S.G. § 7B1.4. Thus, for example, had Young's conduct been classified as a less serious "Grade C" violation, his advisory guideline imprisonment range would have been eight to fourteen months, as opposed to twenty-one to twenty-seven months for the Grade B violation for which he was accountable.[3] *Id.*

---

[3] The Fourth Circuit has stated "[a]ccording to § 3583(e), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense." *United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)(2)(A)). As pointed out by the Government, the Fourth Circuit made this observation without citation to *Williams* or any other authority. (Appellee's Br. at 25.) Moreover, the Fourth Circuit's statement was not supported by any analysis. Finally, subsequent holdings of the Fourth Circuit, albeit non-precedential, have sustained revocation sentences even where a district court has cited in support of the sentence the "need to provide just punishment," *United States v. Jennette*, 324 F. App'x 279, 280 (4th Cir. 2009); promote respect for the law, *United States v. Black*, 289 F. App'x 613, 615 (4th Cir. 2008); and the seriousness of the defendant's supervised release violation, *United States v. Turner*, 241 F. App'x 168,

It is thus plain to us that a district court's consideration of, and explicit reference to, the § 3553(a)(2)(A) factors in imposing a sentence for the violation of supervised release is not a procedural error that renders the sentence *per se* unreasonable. Of course, there may be a case where a court places undue weight on the seriousness of the violation or the need for the sentence to promote respect for the law and provide just punishment. But this is not such a case.

Unlike *Williams*, in which the Second Circuit affirmed a sentence above the advisory guideline range notwithstanding the district court's explicit reliance upon the seriousness of the violation, the District Court's sentence in this case fell within the advisory guideline range. As noted above, the guideline range takes into consideration the seriousness of the offense, and we find it difficult to conceive a scenario where a district court's reference to a particular § 3553(a)(2)(A) factor would render a within-guideline range sentence unreasonable *per se*. Furthermore, it is evident that the District Court in this case was motivated to sanction the repeated breaches of trust that occurred so soon after Young's release from custody. As noted above, the primary purpose of a sentence for the violation of supervised release is "to sanction the defendant's breach of trust." *Bungar*, 478 F.3d at 544. In this regard, the District Court commented on the fact that Young breached the trust reposed in him despite the

---

171 (4th Cir. 2007). It thus appears that the Fourth Circuit has acknowledged that the § 3553(a)(2)(A) factors are inextricably intertwined with other factors, such as the nature and circumstances of the offense, that a court must consider in determining the appropriate sanction for a supervised release violation.

existence of a supportive family and his educational and vocational advantages. The District Court also appropriately considered the need to provide deterrence and to protect the public from further criminal conduct by Young, observing that he engaged in the same type of criminal conduct that resulted in the offense of conviction within weeks of his release. We have recognized that criminal activity of the same sort underlying the offense of conviction shortly after the defendant's discharge from custody "surely bespeak[s] a breach of trust." *United States v. Blackston*, 940 F.2d 877, 894 (3d Cir. 1991). We have also acknowledged that a defendant's immediate return to a past pattern of criminal conduct, as is the case here, "showed . . . that he continued to pose a threat to the community," a pertinent sentencing consideration under § 3583(e). *See Bungar*, 478 F.3d at 546. It is thus evident that the District Court's concluding observation that the sentence of twenty-four months' imprisonment "meets the sentencing objectives by reflecting the seriousness of the violations, promoting respect for the law, and providing just punishment" (A. 150), did not reflect undue reliance upon the § 3553(a)(2)(A) factors. Accordingly, Young is not entitled to relief simply because the District Court took into account those factors in imposing its sentence.

## B.

Young contends that the District Court committed procedural error by finding that Young's criminal conduct involved his preying on others when there was no evidence presented at the revocation hearing to support such a conclusion. Young further argues that "the [D]istrict [C]ourt improperly drew on unreliable information from another

19

hearing involving a co-defendant, where neither Mr. Young or his counsel were present." (Appellant's Br. at 19.) Young's assertion is mistaken.

At the sentencing proceeding on his original federal conviction, the District Court observed that Young had preyed on vulnerable addicts and alcoholics by having them present bogus checks in exchange for a share of the proceeds. There was ample support for this conclusion in the factual findings set forth in the PSR, and Young did not object to those findings. In fashioning the revocation sanction, the District Court was required to consider "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and it was not error for the District Court to consider Young's "history and characteristics" as revealed in the PSR that was considered at a sentencing proceeding conducted less than two years before the revocation hearing.

Young also complains that the District Court faulted him for having had his mother pay the restitution of $384.74. Young contends that there was no evidentiary support for the District Court's observation that Young "should have been able to come up with the wherewithal [to make restitution], even in prison." (A. 157.)

As the Government points out, the District Court's statements about restitution must be placed in context. The District Court initially understood that Young himself had satisfied the restitution obligation. Satisfaction of a restitution obligation implies acceptance of responsibility for the underlying crime. That Young's mother paid the very modest restitution obligation of a 53-year-old college-educated person implies a failure on Young's part to take responsibility for his actions. The District Court was entitled

20

to take this factor into account in determining the appropriate sanction for the supervised release violation, and committed no error in observing that it was troubled by the fact that Young had not made any effort to make restitution on his own.

C.

Young's final claim of procedural error is that the District Court failed to give meaningful consideration to mitigation factors. Specifically, Young asserts that the District Court failed to take into account the substance abuse component of Young's criminal conduct and the support offered by Young's friends and family.

A defendant, of course, is entitled to meaningful consideration of the pertinent sentencing factors. *See United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). But the record need not show that every argument advanced on behalf of the defendant was addressed. *Id.* All that is required is that "the record makes clear the court took the [pertinent] factors into account in sentencing." *Id.*

In this case, the record demonstrates that the District Court did give meaningful consideration to the mitigation factors advanced by Young. First, the District Court acknowledged the role that substance abuse problems had played in Young's criminal conduct. In fact, it recommended to the Bureau of Prisons that Young be placed in any substance abuse program for which he qualified. Second, the District Court recognized that friends had pledged to assist and support Young to avoid a repetition of his substance

abuse and related criminal conduct. None of the persons who came forward to offer assistance, however, had experience working with addicts. The District Court also noted that Young had similar support when he was discharged from custody, but reverted to drug use and criminal conduct as soon as he left prison.

The District Court's statements evince deliberate and careful consideration of Young's arguments. The District Court's decision to accord less weight to mitigation factors than that urged by Young does not render the sentence unreasonable. *See Bungar*, 478 F.3d at 546.

IV.

Young's challenge to the substantive reasonableness of his sentence is premised upon alleged procedural errors. We have concluded, however, that Young has failed to show that the District Court committed any procedural error in sentencing him to a prison term of twenty-four months plus a supervised release term of one year. It necessarily follows, therefore, that the substantive challenge to his sentence fails as well. Indeed, it cannot be said in this case that "no reasonable sentencing court would have imposed the same sentence on [Young] for the reasons the district court provided." *Doe*, 617 F.3d at 770 (internal quotation marks omitted). Accordingly, we will affirm the District Court's judgment.