**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2150
_____

UNITED STATES OF AMERICA

v.

TYSHAUN ST. VALLIER,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 07-cr-00513-002)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2012
_____

Before: RENDELL, SMITH and BARRY, Circuit Judges

(Opinion Filed: July 17, 2012)
_____

OPINION
_____

BARRY, Circuit Judge

Tyshaun Saint Vallier ("St. Vallier") appeals the District Court's amended

judgment of sentence ordering him imprisoned for a total term of 204 months.  He argues

that the District Court erred in varying upward from the advisory guideline range, and

also erred in refusing his request to vary downward. We will affirm.

## I.

St. Vallier and Ezra McCombs ("McCombs") were involved in a conspiracy to import cocaine into the United States from Trinidad. As part of the conspiracy, St. Vallier recruited a family friend named Charisse LaRoche ("LaRoche") to assist in the smuggling of the drugs, helping her to get a passport and paying for her flight to Trinidad.

In early May 2007, St. Vallier, McCombs, and LaRoche traveled to Trinidad, where they met an individual named "Trini" who provided them with the drugs they would thereafter import into the United States. St. Vallier and McCombs gave LaRoche a tubular bottle of cocaine, together with some lubricant, and instructed her to hide the tube in her vaginal cavity. LaRoche complied. The remaining cocaine was hidden in the railings of suitcases, and in toiletry bottles and containers packed amongst their personal belongings. The group then traveled to the airport and returned to the United States.

When they arrived at Newark Liberty Airport, St. Vallier, LaRoche, and McCombs were inspected by Customs officers. Their luggage was searched and the cocaine was eventually discovered. During a search of LaRoche, she admitted that she had hidden drugs inside her body, and removed the tube containing 419 grams of cocaine. All told, the officers retrieved approximately 3,280 grams of cocaine from the conspirators.

St. Vallier and McCombs were charged in a two-count indictment with conspiracy to import cocaine, and importation of cocaine in violation of 21 U.S.C. §§ 952(a) and

2

960(b)(2). St. Vallier was released on a $250,000 appearance bond with numerous bail restrictions, but he later cut off his electronic monitoring bracelet and absconded, failing to appear for the scheduled pretrial hearings or the trial date. The District Court issued a warrant for his arrest.

The U.S. Marshals Service was unable to locate St. Vallier for several months. On October 1, 2008, however, marshals interviewed a man in New Jersey state custody named Kahliff Bailey ("Bailey"). Bailey claimed to have information about St. Vallier, and provided the marshals with a cell phone number that St. Vallier was using. He also informed the marshals that St. Vallier was planning to murder LaRoche the next day in order to prevent her from testifying on behalf of the government, and provided details regarding that plan. In response to this information, the marshals took LaRoche to a secure location. They also obtained a pen register on the cell phone number provided by Bailey, and used it to track St. Vallier. On October 3, 2008, St. Vallier was apprehended in the District of Maryland.

Upon his return, the District Court revoked St. Vallier's bail and ordered him remanded. A grand jury issued a superseding indictment, which added a charge of failure to appear in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1)(A)(i). On March 30, 2009, St. Vallier pleaded guilty to the charge of failure to appear, but proceeded to trial on the drug charges. Both McCombs and LaRoche testified on behalf of the government. On April 28, 2009, after a three-day trial, the jury found him guilty of conspiracy to import

3

cocaine and importation of cocaine.

On August 3, 2009, the case proceeded to sentencing. St. Vallier's offense conduct carried a base offense level of 28. The Presentence Report ("PSR") recommended a two-level upward adjustment for obstruction of justice based on St. Vallier's flight and the evidence that he had plotted against a cooperating witness. The government urged an additional two-level upward adjustment, arguing that St. Vallier's flight and his plotting against a government witness were discrete instances of obstruction. St. Vallier, for his part, argued that he should receive a downward departure on the ground that he had jumped bail under duress. In particular, St. Vallier claimed that his former attorney in the case, Paul W. Bergrin, had advised him to kill LaRoche. St. Vallier refused to do so, and claimed he began to fear Bergrin.[1] The District Court rejected both parties' arguments. The Court also rejected St. Vallier's contention that the PSR assigned him too many criminal history points, and applied a criminal history category of V.

St. Vallier's total offense level of 30 and criminal history category of V yielded a guideline range of 151-188 months' imprisonment. In considering the § 3553(a) factors, however, the District Court stated:

[W]hile I have not granted the motion of the government to depart upward,
I do think the criminal history category and the criminal offense level, as

---

[1] Interestingly, St. Vallier kept Bergrin as his counsel even *after* he was recaptured by the marshals, and told the District Court that he was "satisfied" with Bergrin's services. Bergrin withdrew from the case before trial.

they are referenced, they don't adequately reflect what really happened here. . . . There was significant money that was spent by the government . . . to capture you. You at no point attempted to surrender or come in. Nothing. This was months on end. . . . [You] cut the bracelet, you threw the bracelet out. There was time and money to relocate Miss LaRoche, and to simply say you absconded, so you get a two-point enhancement and to leave it at that, I think is – it doesn't adequately reflect what happened here. Because what happened here is certainly more serious than a person not showing up for court. And whether I give real credence to this murder plot or not, I do think there was certain information in it that was certainly reliable enough that the government felt it necessary to relocate her.

(Supp. App. 148-49.) In light of these findings, the District Court opted to "vary upwards to a level 32,"[2] and imposed a sentence of 204 months imprisonment, consisting of 188 months on the drug counts and a consecutive sentence of 16 months on the failure to appear count.

St. Vallier appealed. On appeal, he primarily argued the various reasons why he believed his convictions should be reversed. He also argued, however, that the District Court committed procedural error in calculating his criminal history by relying on information in the PSR that he had served a 364 day sentence pursuant to an earlier conviction when, in fact, that sentence had been suspended. He alleged that this error resulted in additional criminal history points, and wrongfully raised him from a criminal history category IV to a V. The government conceded error on this point, and we vacated St. Vallier's sentence and remanded for resentencing. *United States v. St. Vallier*, 404 Fed. App'x. 651, 2010 WL 5176853 (3d Cir. Dec. 22, 2010) (unpublished). His

---

[2] A total offense level of 32, with a criminal history category of V, would yield a range of 188-235 months' imprisonment.

judgment of conviction, however, was affirmed in all respects.

On April 26, 2011, St. Vallier appeared before the District Court for resentencing. At the resentencing, the Court acknowledged that St. Vallier's correct guideline calculation was now a total offense level of 30, with a criminal history category of IV rather than V. This resulted in an advisory guideline range of 135-168 months. The Court then heard argument from the parties. St. Vallier used the resentencing as an opportunity to set forth his post-sentencing activities, including his course work and tutoring activities while in prison. He also claimed that he now accepted responsibility for his criminal conduct. The government countered that essentially nothing had changed from the first sentencing and the Court should impose the same sentence. The Court agreed, reasoning:

> I did feel it was appropriate in 2009 to vary upward, given all the circumstances that surround the incident and, quite honestly, I still think that's appropriate. I don't find any basis not to go upwards, given the fact of the alleged murder plot of the witness, given the flight, and just—once again, all the time, expense, effort . . . [and] resources that were wasted to essentially bring you to justice. And so there's nothing before the Court today that requires any reconsideration of the sentence that was previously imposed.
>
> I do acknowledge that you are more appropriately under a criminal history category of 4, and so I think that's appropriate. But I do think for the same reasons I previously indicated in August of 2009, that it is appropriate for the Court to vary upward because I do think that that sentence at a level of 32 criminal history category of 4,[3] does reflect the seriousness of what occurred.

(App. 18-19.) The Court therefore re-imposed the sentence of 204 months'

imprisonment.  St. Vallier timely appealed.

## II.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

"Appellate review of sentencing decisions is limited to determining whether they are reasonable." *United States v. Merced*, 603 F.3d 203, 213 (3d Cir. 2010). "Reasonableness review proceeds in two stages, and employs the familiar abuse of discretion standard at each stage." *Id.*  First, the appellate court ensures "that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Second, the court considers the substantive reasonableness of the sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).  We have held that the "substantive reasonableness inquiry must be highly deferential" because the "sentencing judge, not the court of appeals, is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Merced*, 603 F.3d at 214.  As we explained:

> For a sentence to be substantively reasonable, a district court must apply the § 3553(a) factors reasonably to the circumstances of the case.  A sentence

---

[3] A total offense level of 32, with a criminal history category of IV, would yield a range of 168-210 months' imprisonment.

that falls within the recommended Guidelines range, while not presumptively reasonable, is less likely to be unreasonable than a sentence outside the range. The pertinent inquiry is whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors.

*United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007). "The party challenging the sentence bears the ultimate burden of proving its unreasonableness . . . ." *Id*. Ultimately, the sentence must be affirmed "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

In arguing that his overall sentence was unreasonable, St. Vallier contends that the District Court "overlooked the significant and meritorious arguments made during the re-sentencing hearing for a downward variance, and clearly did not address these arguments in the final determination." (Appellant's Br. at 7-8.) In particular, he cites four factors that he contends the Court overlooked: (1) his acceptance of responsibility; (2) undue hardship on his family; (3) disparities with the sentence of his co-defendant (McCombs); and (4) his rehabilitative efforts.

The District Court did not abuse its discretion. The Court explicitly considered his "acceptance of responsibility" argument, but found it unpersuasive. The Court was well within its rights to do so. St. Vallier submitted a letter to the Court with a general (and somewhat vague) apology for his actions, and repeated that apology during his allocution at the resentencing. His apology, however, did not admit his guilt or even specifically

8

discuss the offense conduct.  Moreover, his attorney's resentencing memorandum stated that "defendant had always maintained his innocence," and reasserted statements by St. Vallier's former attorney at the initial sentencing that St. Vallier "was wrongly convicted" and did not intentionally become part of drug smuggling.  As the Court pointed out at the initial sentencing, St. Vallier had consistently blamed other people (*e.g.*, Bergrin, McCombs) for his actions, fled and impeded the judicial process, and forced the government to try him on drug charges for which the jury convicted him in "less than an hour."  The fact that St. Vallier made a generic statement of "acceptance of responsibility" at the resentencing did not compel the Court to ignore these other facts.

Likewise, there is little merit to St. Vallier's argument regarding the sentencing disparity between he and McCombs.  St. Vallier raised this argument only in his written memorandum, and his attorney declined to press it at the hearing.  While McCombs received only a 48 month sentence—substantially lower than St. Vallier's 204 month sentence—McCombs' situation differed significantly from St. Vallier's.  In particular, McCombs pleaded guilty; accepted responsibility for his actions; received a downward departure under 5K1.1 for cooperating and substantially assisting the government against St. Vallier; and, according to the government's brief, had a minimal criminal record.  As the government correctly notes, the District Court's obligation to avoid unwarranted sentencing disparities requires consideration of whether the codefendants are truly "similarly situated."  *United States v. Charles*, 467 F.3d 828, 833 (3d Cir. 2006).  St.

9

Vallier and McCombs are not.

Nor do St. Vallier's arguments regarding his family situation or his post-sentencing rehabilitative efforts show that the District Court abused its discretion. The Court heard St. Vallier's arguments on both these points, and explicitly "commend[ed]" him for "taking advantage of some educational and vocational opportunities" available at the prison. Despite that fact, however, the Court was unpersuaded that either of these factors warranted a lower sentence. We have held that a district court's "decision to accord less weight to mitigation factors than that urged by [the defendant] does not render the sentence unreasonable." *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011).

Finally, although St. Vallier's advisory guideline range changed between the initial sentencing and the resentencing, the guidelines are only one factor to consider and the District Court had an ample basis for concluding that a 204 month sentence was warranted regardless of whether he was a criminal history category IV or V. In particular, the Court properly considered: (1) the seriousness of St. Vallier's offense conduct, which involved the smuggling of over three kilograms of cocaine, including in LaRoche's body cavity; (2) the fact that he had a substantial criminal history, which included violent and reckless conduct; (3) the fact that, despite his serious criminal history, he had never served any meaningful jail time; (4) the high likelihood that he would remain a threat, and the need to protect the public from any further crimes in which he might become involved; (5) his lack of "ownership" of his responsibility for his actions; (6) his willful

10

flight and the extensive efforts that had to be made to recapture him; (7) evidence of a plot to murder a government witness that was credible enough to force the government to relocate the witness; and (8) that a 204 month sentence would promote respect for the law and deter him and others from engaging in such activity.

In sum, the record clearly shows that the District Court discharged its duty to give "appropriate and judicious consideration" to the relevant § 3553(a) factors, and had a reasonable basis to support its 204 month sentence. We cannot say that "no reasonable sentencing court" would have imposed a 204 month sentence on St. Vallier.

### III.

For the foregoing reasons, the judgment of the District Court will be affirmed.