NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2015
Decided July 15, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2732

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:92-CR-30004-001-MJR |
| HORATIO A. SUMRALL, *Defendant-Appellant*. | Michael J. Reagan, *Chief Judge*. |

**O R D E R**

The district court revoked Horatio Sumrall's supervised release and ordered him to serve an additional 36 months in prison. In this appeal Sumrall argues that the court, in selecting a term of that length, relied too heavily on 18 U.S.C. § 3553(a)(2)(A), which directs a *sentencing* court to consider the "need for the sentence" to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." Section 3553(a)(2)(A) is not among the statutory factors applicable to *revocations of supervised release*, though we have approved its consideration during revocation proceedings. The district court did not place too much reliance on this factor, so we affirm the judgment.

Sumrall ran a drug ring in East St. Louis, Illinois, selling powder and crack cocaine. He was convicted in 1992 of engaging in a continuing criminal enterprise, 21 U.S.C. § 848, conspiring to distribute cocaine, *id*. §§ 846, 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c). As part of a plea agreement, he cooperated with the government after sentencing, and his original prison terms totaling 420 months later were reduced to 180 months. *See* FED. R. CRIM. P. 35(b).

Sumrall's sentence included concurrent terms of supervised release, the longest being 10 years on the conspiracy count. He was released from prison in March 2005 and soon began racking up violations: 5 in 2005, 7 in 2006, 5 in 2007, 2 in 2008, 4 in 2009, 1 in 2010, 2 in 2011, 3 in 2012, 2 in 2013, and 3 in 2014, for a total of 34 violations. In November 2013, about 17 months before Sumrall's 10-year term of supervised release would expire, his probation officer petitioned for revocation (that petition was amended twice to include additional violations). By the time of Sumrall's revocation hearing in July 2014, he had accumulated Grade B violations for committing new crimes (among them multiple false statements and thefts, including one theft involving a motor vehicle and another for which he was serving time in state prison), as well as Grade C violations for, among other infractions, committing traffic offenses, leaving the judicial district without permission, failing to submit monthly reports to his probation officer, and failing to notify his probation officer of contacts with law-enforcement authorities. Sumrall admitted every violation. As a result he faced a reimprisonment range of 18 to 24 months under the Chapter 7 policy statements applicable to revocations of supervised release. *See* U.S.S.G. § 7B1.4.

The government argued for an above-range term of 36 months, noting that Sumrall had admitted committing multiple thefts, some of them after being charged with other thefts and released on bond. One of those theft charges, the government said, involved 24 tons of stolen metal that was sold to a scrap yard.

Sumrall's lawyer countered that a prison term at the low end of the range should be sufficient because, according to counsel, Sumrall had demonstrated acceptance of responsibility by admitting all of the violations. One of the theft charges, counsel asserted, was still pending in state court because the evidence was weak and prosecutors didn't want to go to trial. And it was significant, counsel added, that Sumrall had not been in the drug business or used guns since his 1992 convictions. The lawyer explained that Sumrall was a magnet for stolen property because, with only a high school education, he works in the junk and salvage business. He said that Sumrall has a

supportive wife and daughters and is basically a "pretty good guy," though one who "doesn't follow the rules" and "is probably mildly sociopathic."

Sumrall personally addressed the court and asked that his federal prison term run concurrently with his undischarged state sentence so that he could return to his family.

The district judge instead ran the 36-month prison term consecutively to Sumrall's state sentence. Before announcing that term, the judge explained that he would apply the factors in § 3553(a), including the need for the punishment "to reflect the seriousness of the offense, promote respect for the law and provide just punishment." This was a situation, the judge said, where the additional imprisonment should be "driven by deterrence and punishment insofar as the 3553 factors are concerned, as well as promoting respect for the law." The judge noted the high number of violations and emphasized that, while some of them were dated and others technical, Sumrall still had committed three felonies despite the probation office's best efforts to work with him. Sumrall had steered clear of drugs and guns, the court agreed, yet he had "reinvented" himself as a thief. His thefts, the court reasoned, were serious even if nonviolent and, to the extent committed while on bond, constituted "double thumbing of the nose to the Court." The judge gauged the likelihood of recidivism as high and sought to deter Sumrall and protect society. As a final thought, the judge informed Sumrall that "the seriousness of the grade B violations" had driven the choice of a term above the range.

Sumrall's single argument on appeal is that the district court put too much weight on the need for his punishment to reflect the seriousness of his violations, to promote respect for the law, and to provide for just punishment. All of these concerns are found in § 3553(a)(2)(A), which applies at a sentencing hearing. But Sumrall was not being *sentenced*, and unlike most other subsections of § 3553(a), subsection (a)(2)(A) is not expressly incorporated into 18 U.S.C. § 3583(e), which governs *revocations of supervised release*. *See United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008); *United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005). That said, Sumrall necessarily concedes this court's position that subsection (a)(2)(A), even though not enumerated in § 3583(e), still can be considered by a district court when revoking a term of supervised release. *See United States v. Phillips*, No. 14-1354, 2015 WL 3937527, at *2 (7th Cir. June 26, 2015); *United States v. Clay*, 752 F.3d 1106, 1107 (7th Cir. 2014); *accord United States v. Webb*, 738 F.3d 638, 641–42 (4th Cir. 2013); *United States v. Young*, 634 F.3d 233, 241 (3d Cir. 2011); *United States v. Lewis*, 498 F.3d 393, 400 (6th Cir. 2007). Sumrall insists, however, that § 3553(a)(2)(A) cannot be the primary justification for a term of reimprisonment. As indicia that the

district judge relied too heavily on § 3553(a)(2)(A), Sumrall points to the judge's references to (1) the need for "incremental punishment" as justification for running the federal term consecutively to his state sentence, (2) the necessity of promoting respect for the law given Sumrall's commission of several offenses while on bond, and (3) the seriousness of the Grade B violations motivating the above-range term of reimprisonment.

The district court's statements are not problematic. First, there is no reason to think that the court's reference to "incremental punishment" concerned § 3553(a)(2)(A), since, as a matter of Sentencing Commission policy, "[a]ny term of imprisonment imposed on the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation." U.S.S.G. § 7B1.3(f) & cmt. n.4. A consecutive term, as far as the Sentencing Commission is concerned, should be the norm, making § 3553(a)(2)(A) irrelevant. *See United States v. Taylor*, 628 F.3d 420, 423–24 (7th Cir. 2010); *United States v. Huusko*, 275 F.3d 600, 603 (7th Cir. 2001). Second, § 3553(a)(2)(A) is not the only subsection of that statute which gives a district court reason to consider, when revoking supervised release, the seriousness of the violations as well as the need to promote respect for the law. As we explained in *Clay*, those considerations are just as important when a district court considers the "nature" of the violations, which the court, to comply with § 3583(e) and § 3553(a)(1), must evaluate. *See Clay*, 752 F.3d at 1108; *Young*, 634 F.3d at 241; *Lewis*, 498 F.3d at 400. Moreover, the district court also relied heavily on the need for deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), noting that Sumrall could not conform his conduct to the norms of civilized society and needed "to be sat on the bench." A quick glance at the list of violations makes this evident.

Accordingly, the judgment is AFFIRMED.