**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2612
_____

UNITED STATES OF AMERICA

v.

QUASIM CUNNINGHAM,
a/k/a Quasim Escada
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00170-001)
District Judge: Honorable Paul S. Diamond

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 9, 2018

Before: GREENAWAY, JR., RESTREPO, and BIBAS, *Circuit Judges*

(Filed: August 1, 2018)
_____

OPINION*
_____

BIBAS, *Circuit Judge*.

While a sentencing judge may not simply presume a defendant dangerous, he may draw

that conclusion after weighing all the evidence. That is what happened here.

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not
constitute binding precedent.

In 2013, the mother of a 13-year-old boy found sexually explicit photos and text messages from Quasim Cunningham on her son's cellphone. After investigating, the police found that Cunningham had tried to seduce this boy as well as two others. Over the course of two years, Cunningham had used the Internet and text messages to discuss sexually explicit subjects with all three boys, to send them pornography, to try to get them to send him pictures of their genitalia, and to solicit sex from them. Based on the evidence at sentencing, the judge found that Cunningham could not adequately control his behavior and that the public needed to be protected "from further crimes this defendant might commit." App. 104. So the judge sentenced him to 20 years' imprisonment followed by 15 years' supervised release, a sentence near the low end of the Guidelines range. The sentencing court had original jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. Because Cunningham's sentence was neither procedurally nor substantively unreasonable, we will affirm.

We review the reasonableness of a sentence for abuse of discretion by assessing whether the sentencing judge "meaningful[ly] consider[ed] all of the sentencing factors in 18 U.S.C. § 3553(a)." *United States v. Olhovsky*, 562 F.3d 530, 546 (3d Cir. 2009) (internal quotation marks omitted). The record must also confirm that the sentencing judge truly engaged in a "considered exercise of discretion" and "recogni[zed], and respon[ded] to, the parties' non-frivolous arguments." *Id.* (internal quotation marks omitted). We are convinced that the sentencing judge did so. Thus, even if Cunningham preserved his reasonableness challenge (which the Government disputes), the sentencing judge did not abuse his discretion.

2

Cunningham contends that his sentence was procedurally unreasonable because it "rested on an unfounded, and apparently unrebuttable, presumption that [he] is likely to reoffend." Appellant's Br. 22. He claims that "the court did not point to any evidence that [he] presents a high risk of recidivism." *Id.* Rather, because Cunningham had a "'hidden side,'" the judge "mus[ed] that 'I don't know that the defendant can even control what it is that drives him to do these things.'" *Id.* (quoting App. 105, 107).

That claim mischaracterizes the sentencing hearing. The record shows that the sentencing judge rooted his decision in the statutory sentencing factors, quoting § 3553(a)(2)'s justifications for punishment. At the start of the hearing, the judge shared his concerns with defense counsel so she could address them. He acknowledged that "the fifteen-year mandatory minimum is a significant sentence." App. 68. He understood that Cunningham had "ha[d] no contact with the criminal justice system at all except for this." *Id.* But "[w]hat bother[ed]" him is that Cunningham got access to "two of these three victims … because of his work" at their schools. App. 69. As these comments reflect, the judge knew the facts well and considered the sentencing factors thoughtfully.

In context, Cunningham's selected quotations do not show that the sentencing judge presumed recidivism. For example, Cunningham quotes the judge's "simpl[e]" refusal to accept "that [Cunningham] will not offend again." Appellant's Br. 23 (quoting App. 107). But the judge made that statement *after* reciting the facts. Only after considering all the evidence and the parties' arguments did he conclude that, "if the defendant were at liberty today, the conduct that he's being punished for he would simply be continuing." App. 103.

Ample evidence supports the judge's conclusion that Cunningham was likely to reoffend. First, his crimes were not isolated encounters. He preyed on the first and second boys for years, repeatedly sent all three boys pornography, and several times asked for pictures of their genitals.

Second, he engaged in a scheme of lying to, manipulating, and trying to intimidate the boys. For instance, he posed as a girl who wanted to have sex. He offered to buy one boy an iPhone and food from McDonald's and offered another boy liquor. And he sent one boy an aerial image of the boy's home, telling him: "If you want some [sex] then come and get it and stop making excuses." App. 44.

Third, all of Cunningham's jobs situated him near children. He was fired from one of these jobs for "inappropriate contact" after being found in a dark classroom with a teenage girl (though she denied any improper contact). App. 52, 97. The sentencing judge reasonably concluded that he chose these jobs to "giv[e] him access to small children." App. 104. The judge "listened very carefully" to Cunningham's mother, sister, and godmother, who described his interest in children as innocent and loving. *Id.* But the judge found that they never "really kn[e]w [Cunningham] at all" and that his crimes reflected "this defendant's hidden side." App. 104-05.

Finally, many of Cunningham's efforts to mitigate his blameworthiness were double-edged swords, as they simultaneously betrayed his lack of self-control. For instance, he was diagnosed as suffering from uncontrolled alcoholism, severe depression, and developmental disabilities. Collectively, these maladies greatly impaired his ability to behave appropriately and make decisions. Even his own lawyer admitted that Cunningham was

4

"drunk on vodka, talking to thousands of men, … making poor decisions, … [and] living in a fantasy world" online. App. 78.

In short, the record supports the sentencing judge's conclusion that Cunningham could not control himself and was likely to reoffend. So we cannot say that the judge presumed without evidence that Cunningham posed a threat to the public.

Nor was his sentence substantively unreasonable. Some of Cunningham's offenses carry a mandatory minimum sentence of 15 years, and the Guidelines recommended 235 to 293 months' imprisonment. So his 240-month sentence sits near the low end of the Guidelines range.

Still, Cunningham argues that his sentence is disproportionate because his conduct was less serious than that of the typical child-pornography case. He claims it was less serious because he never touched a child or revealed a child's identity. But the judge specifically considered both points. And it was his prerogative to weigh other factors more heavily, finding "it especially troubling that the defendant exploited his position as a teacher's aide." App. 104. "The District Court's decision to accord less weight to mitigation factors than that urged by [the defendant] does not render the sentence unreasonable." *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011).

Nor were Cunningham's crimes limited to attempts to produce child pornography. They amounted to "repeated innumerable years-long attempts to solicit sexual relations from three minor children." App. 102.

Given all this, we cannot say that the sentencing judge abused his discretion. So we will affirm the judgment.